CHRISTINE CITRANO ET AL. *v.* BERKSHIRE MUTUAL
INSURANCE COMPANY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued May 6—decision released June 29, 1976

*William B. Rush,* with whom was *Peter D. Clark,* for the appellants (plaintiffs).

*George L. Holmes, Jr.,* with whom, on the brief, was *Edward F. Halloran,* for the appellee (defendant).

House, C. J. This is an appeal from a judgment for the defendant, Berkshire Mutual Insurance Company, rendered following a trial to the court of an action for damages claimed to be due under the provisions of an automobile insurance policy. The

judgment denied damages to the named plaintiff, Christine Citrano, for personal injuries, and to her father, Eugene C. Citrano, for expenses incurred in providing medical treatment for her. The parties stipulated to the essential facts and were at issue on whether the insurance policy in question, because of statutory mandate, provided coverage to the plaintiffs for injuries resulting from the negligent operation of an uninsured motorcycle.

The undisputed facts may be briefly summarized. On September 21, 1970, the named plaintiff, a high school sophomore, received serious injuries while riding as a passenger on a motorcycle which ran off the road and crashed when the operator, James R. Karoli, turned around to her and said, "I like you." The accident was caused by the negligence of the motorcycle operator and, at the time of the accident, he did not have any policy of insurance which was applicable to the injuries sustained by the named plaintiff. Her father and mother, however, at the time of the accident, carried insurance with the defendant which not only insured them as owners of their automobile but also insured their daughter as a resident of their household. That policy contained a provision for coverage against bodily injury caused by uninsured automobiles.[1]

In view of the specific language of coverage J as set out in the policy, limiting coverage to the use of an "uninsured automobile," the plaintiffs have

[1] The policy provided, in pertinent part, as follows: "Coverage J —Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile."

expressly disavowed reliance upon the wording of the policy and "therefore do not base their claims upon the language of the policy of insurance, but rather base their claims upon the legislative mandate contained in the Connecticut General Statutes." More particularly, their reliance is placed on the provisions of § 38-175a of the General Statutes,[2] which prescribes minimum provisions for inclusion in automobile liability policies, and § 38-175d,[3] which expressly provides that policies affording uninsured motorist coverage to which the provisions of

---

[2] The language of 1967 Public Acts, No. 510, in effect at the time of the accident, does not vary from the present language of § 38-175a in any respect material to our discussion of the present case.

"[1967 Public Acts, No. 510] AN ACT CONCERNING MINIMUM PROVISIONS FOR PRIVATE PASSENGER AUTOMOBILE LIABILITY INSURANCE POLICIES. Section 1. Within ninety days from the effective date of this act and from time to time thereafter, the insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger automobiles registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies and shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages. Sec. 2. The commissioner, before adopting such regulations or any subsequent modifications or amendments thereof, shall consult with insurers licensed to write automobile liability insurance in this state and other interested parties. Nothing contained in such regulations or in this act shall prohibit any insurer from affording broader coverage under a policy of automobile liability insurance than that required by such regulations. . . ."

[3] "[General Statutes] Sec. 38-175d. POLICIES DEEMED TO PROVIDE COVERAGE IN ACCORDANCE WITH REGULATIONS. Policies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38-175a to 38-175e, inclusive, apply shall be deemed to provide insurance under such coverages in accordance with such regulations. Policies affording medical payments coverage to which the provisions of said sections apply shall be deemed to provide insurance under such coverage in accordance with such regulations."

§§ 38-175a through 38-175e, inclusive, apply "shall be deemed to provide insurance under such coverage in accordance with . . . regulations" issued by the insurance commissioner.

In *Marcolini* v. *Allstate Ins. Co.*, 160 Conn. 280, 278 A.2d 796, this court, on similar facts and in construing a similar policy, sustained the trial court's conclusion that a motorcycle was not an automobile as the term "automobile" was used in the policy. But that decision is not decisive of the present case. In *Marcolini*, the policy in question had been issued in April, 1967, and ran for one year. While the policy was in force, the General Assembly adopted as No. 510 of the 1967 Public Acts, effective October 1, 1967, what is now General Statutes § 38-175a. Pursuant to that statute, the insurance commissioner adopted insurance regulations §§ 38-175a-1 through 38-175a-8 on December 19, 1967. What is now § 38-175c of the General Statutes was adopted by the 1969 General Assembly as No. 202 of the 1969 Public Acts. Although those statutes and regulations were in effect in 1971 when *Marcolini* was decided, their import was not considered in that opinion which noted (p. 285) : "We have no reason to discuss the relationship of the statute and the regulations to the policy considered here since they do not impose new restrictions on the enforcement of a past contract. See *O'Connor* v. *Hartford Accident & Indemnity Co.*, 97 Conn. 8, 15, 115 A. 484." Those statutory provisions, however, remained in effect during the life of the policy with which we are concerned in the present case and the decisive issue on the present appeal is whether §§ 38-175a, 38-175c and 38-175d require the plaintiffs' policy to be read as including coverage for damages caused by the operator of an uninsured motorcycle.

As we have noted, § 38-175a of the General Statutes (see footnote 2) directs the insurance commissioner to adopt regulations with respect to the minimum provisions to be included in "automobile liability" insurance policies and provides that those regulations "shall make mandatory the inclusion of bodily injury liability . . . and uninsured motorists coverages." That the plaintiffs were at all material times insured by such an automobile liability policy is uncontested.

Shortly after the enactment in 1967 of what is now § 38-175a, the insurance commissioner issued regulations which specifically provided that motorcycles were included in the type of vehicle for which uninsured motorist coverage must be provided in any policy issued in Connecticut. See Regs., Conn. State Agencies § 38-175a-2 (1) (A) (29 Conn. L.J., No. 30, p. 19). About four months after this regulation was issued, the commissioner revoked that regulation and substituted a regulation which excluded motorcycles. See § 38-175a-2 (1) (A) (29 Conn. L.J., No. 48, p. 14). It was this regulation which was in effect during the time the present case arose. While the fact is of only academic interest so far as the present case is concerned, it is noted that the insurance commissioner again changed the regulations effective February 1, 1975, to provide that uninsured motorist protection must be available for injuries sustained as the result of the operation of an uninsured motorcycle. See § 38-175a-6 (a)[4] (36 Conn. L.J., No. 37, pp. 19, 21). During this entire time during which, according to

[4] "[Regs., Conn. State Agencies] Sec. 38-175a-6. MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS. (a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages

the regulations, motorcycles were first included in uninsured motorist coverage, then excluded, and now included, the relevant provisions of the statute which contains the legislative mandate regarding uninsured motorist coverage have remained unchanged.

Section 38-175c of the General Statutes[5] which was in effect when the policy in question was issued expressly provides that "[e]very such policy shall provide insurance in accordance with such regulations . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured *motor vehicles.*" (Emphasis supplied.) It cannot be doubted that, pursuant to the provisions of § 38-175d (see footnote 3), such uninsured motorist coverage for protection against the operators of uninsured motor vehicles is deemed to be included in automobile liability policies. See *Fidelity & Casualty*

from the owner or operator of an uninsured motor vehicle or motorcycle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle or motorcycle. . . ."

[5] "[General Statutes] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. Every such policy shall provide insurance in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured."

(The language of § 38-175c presently in effect is identical to the language above, but contains an additional provision.)

*Co.* v. *Darrow,* 161 Conn. 169, 178, 286 A.2d 288. It is true as this court noted in the *Fidelity & Casualty* case (p. 179) that "[w]ithin their scope the regulations of the insurance commissioner have the force of statutes." As that case indicated (p. 181), however, and as was stated more explicitly later, it is also true that "[w]hile the insurance commissioner is explicitly authorized by § 38-175a to issue regulations to effect the purposes of the statute, any regulations which exceed the authority granted to the commissioner are void." *Berlinski* v. *Ovellette,* 164 Conn. 482, 492 n.4, 325 A.2d 239.

The precise decisive question, then, comes down to one of statutory interpretation and whether a "motorcycle" is a "motor vehicle" as that term is used in § 38-175c. At the time that statute was enacted, the term "motor vehicle" had already been defined in § 14-1 (26) of the General Statutes as "any vehicle propelled or drawn by any power other than muscular . . . ." Conversely, "motorcycle" was defined as "a *motor vehicle* having not more than three wheels." (Emphasis supplied.) General Statutes § 14-1 (25). " 'There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law.' [Citations omitted.]" *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66. Thus when the legislature used the term "motor vehicle" in General Statutes § 38-175c, a section which refers to § 14-112 of chapter 246, "Motor Vehicles," we presume that it did so with the intention that the words be consistent with the then existing statutory definition. Such a presumptive interpretation is further supported by the fact that the legislature chose to use "automobile" in § 38-175a

which specifies the policies to be affected, but used "motor vehicle" in § 38-175c which provided for uninsured motorist coverage under automobile liability policies. With such a clear expression of statutory intent, the conclusion is inescapable that the plaintiffs' automobile liability policy, by mandate of §§ 38-175a, 38-175c and 38-175d of the General Statutes, must be read as including the coverage claimed by the plaintiffs. We conclude, therefore, that by statutory enactment the uninsured motorist provisions of the plaintiffs' own policy covered, within its limits, damages sustained as the result of the negligence of the defendant in operating his uninsured "motor vehicle," which was a motorcycle, and that the trial court erred in concluding otherwise.

With respect to the damages sustained by the plaintiffs, the trial court concluded that the injuries were proximately caused by the negligence of Karoli, the motorcycle operator, that if the plaintiffs were entitled to damages, they would be awarded to the full extent of the policy issued by the defendant insurance company, that Christine Citrano would be entitled to recover damages in the amount of $19,090.25 from the defendant and her father damages in the amount of $909.75. None of those conclusions has been attacked.

Under the circumstances, there is error, the judgment of the Superior Court is reversed and the case is remanded with direction to render judgment for the plaintiffs, awarding as damages the amounts specified in the finding of the court.

In this opinion the other judges concurred.