TINA ROY *v.* CENTENNIAL INSURANCE COMPANY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued June 4—decision released August 24, 1976

*Edward T. Dodd, Jr.,* for the appellant (plaintiff).

*Wesley W. Horton,* with whom, on the brief, was *Maurice T. FitzMaurice,* for the appellee (defendant).

BARBER, J. Pursuant to the provisions of chapter 908 of the General Statutes (§§ 52-406, 52-407), the parties submitted an agreed case to the Superior Court to determine whether the plaintiff is entitled to recover under the "uninsured motorist" provisions of an automobile liability policy issued by the defendant. The court determined that the plaintiff was not entitled to recover, and she has appealed to this court.

The agreed-upon facts may be briefly summarized as follows: On February 6, 1971, Tina Roy, a minor, was injured as a result of a collision between an automobile owned and operated by Anthony D. Frisina, in which Miss Roy was riding as a passenger, and an automobile owned by the Atlantic Richfield Company and operated by Charles J. Leroy. In March, 1972, an action was instituted on behalf of Miss Roy against Frisina, Atlantic Richfield Company, and Leroy, claiming damages for injuries resulting from the accident. The sum of $130,000 was paid by Atlantic Richfield Company and Leroy to Miss Roy, and the suit against all three defendants was withdrawn.

Prior to the date of the accident, the defendant had issued an automobile liability policy to Richard Styring. By the terms of that policy, the company agreed to provide uninsured motorist coverage as follows: "Coverage G—Uninsured Motorists (Damages for Bodily Injury). To pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the ownership . . . or use of such uninsured automobile." Tina Roy is a relative of Richard Styring and is, therefore, an "insured" as that term is used in coverage G.[1] The automobile in which Tina Roy was riding, owned and operated by Anthony Frisina, was an "uninsured automobile" as that term is used in coverage G. The defendant's liability under coverage G is limited to a maximum of $20,000.

[1] The relevant definition in the policy reads as follows: " '[I]nsured' means: (a) the named insured and any relative." Tina Roy apparently is the stepdaughter of Richard Styring, the named insured.

Following withdrawal of the suit against Atlantic Richfield Company, Leroy, and Frisina, Miss Roy submitted a claim under the uninsured motorist provisions of the Styring policy for $20,000. The defendant denied coverage, contending that under the terms of the policy the defendant's "uninsured motorist" liability was reduced by the amount paid by Atlantic Richfield Company and Leroy. Since the amount paid by Atlantic Richfield Company and Leroy, $130,000, far exceeds the $20,000 limit of liability, the defendant's contention, if valid, would remove any liability on its part.

The policy provides that any amount payable by the defendant as uninsured motorist protection is to be reduced by any amount paid on account of the bodily injury either by the uninsured motorist himself or by any other person or organization jointly and severally liable together with the uninsured motorist for the bodily injury.[2] The parties are in agreement that the language of the policy is in accord with regulations issued by the insurance commissioner and that if the regulations and the language of the policy are valid, then Tina Roy is not entitled to recover under the policy. The parties have also agreed that if the regulations and the policy language are not valid, then Tina Roy is entitled to recover $20,000 from the defendant.

---

[2] The policy reads in pertinent part as follows: "Limits of Liability. . . . (b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by (1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operater of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A." This language is substantially identical to that used in 1966 Standard Form Uninsured Motorist Endorsements, part III, reprinted in Widiss, A Guide to Uninsured Motorist Coverage, Appendix A.

The sole issue presented on appeal is whether § 38-175a-6 (d) of the insurance commissioner's regulations which purports to authorize a reduction in the amount of "uninsured motorist" protection to the extent that any sums have been paid by or on behalf of a person liable for the injuries caused the insured is valid.

Section 38-175a (a) of the General Statutes directs the insurance commissioner to "adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies . . . . Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the . . . uninsured motorists coverages under such policies . . . ." Section 38-175c of the General Statutes provides, in part, that every automobile liability insurance policy "shall provide insurance in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury." The minimum coverage required by § 14-112 (a) of the General Statutes is $20,000.

The regulation in question, § 38-175a-6 (d), provides that "[t]he limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in . . . [§ 14-112 (a) of the General Statutes] except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury." The plain-

tiff contends that the insurance commissioner has not been authorized by statute to adopt any such regulation permitting a reduction in the insurer's liability under the "uninsured motorist coverages," that regulation § 38-175a-6 (d) is contrary to the plain and unambiguous language of § 38-175c of the General Statutes, and that the regulation, therefore, is void and of no effect, as is the policy language which conforms to that regulation. The plaintiff argues further that the clear public policy of this state is to require each insurer to provide an irreducible minimum of uninsured motorist coverage and that regulation § 38-175a-6 (d) contravenes that policy. Finally, the plaintiff claims that to give effect to the regulation and the policy language in question is to bestow a windfall upon the insurer to the extent that premiums have been collected for the uninsured motorist coverages.

We have twice had occasion to consider regulation § 38-175a-6 (d) here in question. In *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 286 A.2d 288, the defendant's decedent had been killed when the automobile in which he was riding as a passenger collided with an uninsured automobile. The decedent was covered by the uninsured motorist provisions of two policies, one issued to the decedent and one issued to the driver of the vehicle in which he was riding. Because several other persons riding in the same automobile as the decedent had also been killed in the collision and their estates had also filed claims against the uninsured motorist provisions of the policy issued to the driver of that automobile, the decedent's estate received only a proportional amount of the coverage provided by that policy. The estate, therefore, sought recovery under the uninsured motorist provisions of the

policy issued to the decedent. The insurer which had issued the decedent's policy denied coverage, claiming that the "other insurance" clause contained within its policy precluded recovery. The question of the validity of the "other insurance" clause was reserved for this court, and we held the clause invalid to the extent that it reduced the amount of coverage "actually available" to the decedent to less than the statutory minimum of $20,000. Important to our decision was the fact that although the insurance commissioner's regulations authorized the "setoff" of recoveries from any person responsible for the injury against the uninsured motorist protection, the regulations did not authorize "other insurance" clauses.

The second case, *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 370 A.2d 1006, involved somewhat similar circumstances. The plaintiff, injured when his motorcycle collided with an uninsured motor vehicle, was covered by the uninsured motorist provisions of two policies. One policy had been issued to the plaintiff's mother, who owned the motorcycle, and the other policy had been issued to the plaintiff's father by the defendant. The plaintiff recovered $18,000 from the first policy and then sought recovery under the second. Aetna, which had issued the second policy, denied coverage on the grounds that the plaintiff had had the statutory minimum of $20,000 "actually available" to him under the first policy. The majority of this court held that the plaintiff was entitled to recover up to $20,000 from Aetna. Although regulation § 38-175a-6 (d) authorized Aetna to reduce its liability under the uninsured motorist provisions of its policy to the extent of any sums paid "by or on behalf of any person responsible for the injury," we

held that the payment made to the plaintiff under the "uninsured motorist" provision of the first policy did not fall into this category because regulation § 38-175a-6 (a) provides that such sums are paid "on behalf of the insured," and not on behalf of the person responsible for the injury.

The present case differs from both *Darrow* and *Pecker* in several respects. Firstly, unlike *Darrow*, the plaintiff here has already recovered far in excess of the statutory minimum. Secondly, unlike *Pecker,* the amounts previously recovered have been paid by one of those responsible for the injury, and there is only one "uninsured motorist" provision involved. Finally, and most importantly, in both *Darrow* and *Pecker* the regulations of the insurance commissioner were assumed to be valid and the issue raised in each case was whether the policy provisions in question complied with those regulations. In the present appeal, the policy provision and the regulations are mutually consistent, and the issue is whether the regulation itself is within the scope of the authority vested in the commissioner by the applicable statutes.

The question raised is one of first impression in this court,[3] and requires some preliminary discussion of the statutes involved. Sections 38-175a through 38-175e were originally enacted as one bill in 1967. Public Acts 1967, No. 510. No committee hearings were held on the bill before it was enacted and debate on the measure was minimal. See 12 S. Proc., 1967 Sess., pt. 4, p. 1957; 12 H.R. Proc.,

---

[3] In *Berlinski* v. *Ovellette,* 164 Conn. 482, 492, 325 A.2d 239, we specifically assumed, without deciding, that a closely related regulation, § 38-175a-6 (c), was within the authority vested in the commissioner and therefore valid.

1967 Sess., pt. 8, p. 3296. Sections 1 and 2 of the act, which became § 38-175a of the General Statutes, directed the commissioner of insurance to consult with insurers and other interested parties, and then to "adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies," which regulations were to "make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages." Section 3 of the act, which became § 38-175b of the General Statutes, required every policy to provide bodily injury liability and property damage liability coverage of $20,000. Section 4, which became § 38-175c of the General Statutes, mandated that every automobile liability insurance policy should "provide insurance in accordance with such regulations, with limits for bodily injury or death not less than . . . [$20,000], for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." Section 5, which became § 38-175d, provides that every policy "shall be deemed to provide insurance . . . in accordance with such regulations." Section 6, which became § 38-175e, authorized the issue of "binders" pending issuance of a policy. The act itself neither specifically authorized nor prohibited the adoption of regulations by the commissioner which would permit an insurer to "set off" sums received by the insured against the insured's "uninsured motorist" coverage.

Section 38-175c has been amended twice since its enactment. In 1969, a proviso was added which entitled an insured to purchase higher limits of uninsured motorists coverage, the $20,000 maximum having proven "inadequate." Public Acts 1969, No. 202; see 13 S. Proc., 1969 Sess., pt. 4, p. 1699.

And in 1971 a new sentence was added concerning arbitration. Public Acts 1971, No. 767. In neither instance did the General Assembly either broaden or restrict the commissioner's authority to adopt regulations.

The overall effect of §§ 38-175a through 38-175e, both as originally enacted and as subsequently amended, is to vest the insurance commissioner with very broad discretion in the formulation of regulations concerning the minimum provisions to be included in automobile liability insurance policies. The plaintiff contends that this otherwise broad discretion is limited by the specific requirement of § 38-175c that each policy provide a minimum level of uninsured motorists coverage. The unexpressed premise of her argument that regulation § 38-175a-6 (d) is invalid is her assumption that § 38-175c clearly and unambiguously specifies the nature of the uninsured motorists coverage which must be provided. The plain words of the statute, however, simply require that each policy provide a minimum level of uninsured motorist coverage "for the protection of persons insured thereunder." The statute does not require that uninsured motorist coverage be made available when the insured has been otherwise protected, such as when the uninsured motorist is only one of two or more joint tortfeasors, or when the uninsured motorist has other resources available to protect the insured. Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability

insurance policies; the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of "protection."

Although any regulation which exceeds the authority granted to the insurance commissioner is void; *Citrano* v. *Berkshire Mutual Ins. Co.,* 171 Conn. 248, 255, 368 A.2d 54; *Berlinski* v. *Ovellette,* 164 Conn. 482, 492 n.4, 325 A.2d 239; within their scope the regulations have the force of statutes. *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 179, 286 A.2d 288. Section 38-175c does not specifically prohibit the adoption of a regulation permitting the reduction of uninsured motorist coverage, whereas § 38-175a explicitly authorizes the commission to adopt regulations relating "to the insuring agreements, exclusions, conditions and other terms applicable to . . . uninsured motorists coverages." In the construction of statutes, great deference is to be accorded to the construction given the statute by the agency charged with its enforcement. *Griggs* v. *Duke Power Co.,* 401 U.S. 424, 433, 91 S. Ct. 849, 28 L. Ed. 2d 158; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155, cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699. The automobile liability insurance business is one which is extensively regulated; *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 473, 338 A.2d 453; and judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state. In view of the very broad grant of regulatory authority to the insurance commissioner, we are not persuaded that the commissioner was without authority to adopt regulation § 38-175a-6 (d).

The plaintiff contends that regulation § 38-175a-6 (d) is contrary to the "public policy" of this state. The "public policy" embodied in §§ 38-175a through 38-175e of the General Statutes, however, is simply to ensure that a motorist injured by another motorist has at least $20,000 in coverage available. If the other motorist is insured, that policy must, by statute, provide at least $20,000 in personal injury and property damage liability coverage. If the other motorist is uninsured, the injured motorist is covered by the "uninsured motorist" provisions of his own policy. Where, as in the present case, the injured party receives more than the minimum level of protection from one of those responsible for the injuries, the statutory purpose is satisfied and no recourse to the uninsured motorist coverages is warranted. Cf. *Simonette* v. *Great American Ins. Co.,* supra.

The third argument advanced by the plaintiff in support of her position is that regulation § 38-175a-6 (d) produces windfall profits for the insurer because it permits the insurer to deny coverage after it has collected premiums for uninsured motorist protection. The plaintiff has offered no evidence, however, to support her contention that such windfall profits will result. This court can only speculate as to whether the premiums charged by the insurer are premised upon a payment of benefits in every instance in which an uninsured motorist injures an insured, or whether the premium rates take into account the reduction of coverage in accordance with the regulations and the policy language.

It should be noted that the regulations of the insurance commissioner may present some apparently anomalous results under certain circum-

stances. For example, under the doctrine of *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 370 A.2d 1006, a "stacking" of uninsured motorist protection is allowed if the insured is covered by two or more policies and is injured by an uninsured motorist. An insured in the *Pecker* situation may, therefore, be in a better position than he would be had he been injured by an insured motorist carrying only the statutory minimum of protection. And under the rule of *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 338 A.2d 453, an insured who is injured by a motorist carrying the statutory minimum of liability insurance may be in a less advantageous situation than he would have been in had he been injured by an uninsured motorist. Finally, under regulation § 38-175a-6 (d), an insured who is injured by the concurrent action of two other motorists, one insured and one not insured, may very well not receive any benefits at all from his "uninsured motorist" protection. The "injustice" resulting from the unequal treatment accorded insured motorists under these almost identical situations is, however, more illusory than real. The purpose of mandatory insurance, minimum liability insurance levels, and uninsured motorists protection requirements can only be to ensure that certain minimum protections are afforded all motorists. These statutory devices cannot serve to eliminate all differences in treatment which may result to an insured due to the varying levels of insurance carried by motorists or because of varying financial resources of motorists. If the minimum levels of protection are inadequate, it is the function of the legislature, not the judiciary, to raise those levels. Failing legislative action, the cautious motorist may, under § 38-175c, as amended,

purchase additional personal protection. This court cannot, however, by a tortured construction of the statutory and regulatory provisions, indirectly eliminate possible inequities in coverage, where the legislature has failed to do so directly.

There is no error.

In this opinion the other judges concurred.