ALLSTATE INSURANCE COMPANY *v.* GLORIA SEMPLE

SUPERIOR COURT JUDICIAL DISTRICT OF FILE No. CV 79 0236083
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed October 11, 1979

*Skelley, Vinkels, Williams & Rottner,* for the plaintiff.

*Perelmutter & Potash,* for the defendant.

DAVID H. JACOBS, STATE REFEREE. This is an appeal from an arbitration decision awarding the defendant, Gloria Semple, damages for personal injuries in the sum of $80,000. Gloria Semple, the claimant in the arbitration proceeding which is the subject of this application, was injured while riding

as a passenger on an uninsured motorcycle.[1]  The motorcycle was involved in a collision with a truck. Both drivers were Connecticut residents.  The accident occurred in Oakville, Connecticut, on May 30, 1977.

At the time of the accident, Gloria Semple, an Iowa resident, was visiting relatives in Connecticut. The arbitrator's findings disclose that the defendant was a resident of the household of her father and stepmother, who live in Sioux City, Iowa.  The parents are the owners of insurance policies which they purchased from the plaintiff, the Allstate Insurance Company, in Iowa.  The policies cover four vehicles owned by the Semples and included $20,000 uninsured motorist coverage on each automobile; thus, $80,000 total uninsured motorist protection is provided members of the Semple home.

Summarized, the relationship between the parties has been as follows:  The plaintiff and the defendant's parents entered into written contracts of automobile insurance containing agreements in the policies for arbitration; on August 24, 1978, the defendant filed a demand for arbitration; on June 29, 1979, after an arbitration hearing held in New Haven, the arbitrator made a written award finding, inter alia, that the defendant was entitled to recover damages for personal injuries in the sum of $80,000 and that the laws of Connecticut should be applied to govern the recovery; on July 5, 1979, the plaintiff was duly notified of the arbitrator's award; on July 25, 1979, the plaintiff filed an appli-

---

[1] A problem that has arisen is whether a motorcycle can be considered an uninsured automobile.  *Askey* v. *General Accident Fire & Life Assurance Corporation*, 30 App. Div. 2d 632 (N.Y.) ; *Voris* v. *Pacific Indemnity Co.*, 213 Cal. App. 2d 29.  Those cases holding that a motorcycle can become an uninsured automobile have done so under the theory that the statutes requiring issuance of uninsured motorist coverage refer to "uninsured motor vehicles," and a motorcycle is generally considered to fall within the classification of a motor vehicle.

cation seeking to correct, modify or vacate the arbitrator's award pursuant to § 52-418 (d) of the General Statutes; and on September 17, 1979, the defendant filed a motion to confirm the arbitrator's award.[2]

The ground upon which the plaintiff seeks to correct, modify or vacate the arbitrator's award is § 52-418 (d) of the General Statutes. That section, entitled "Vacating awards," provides: "In any of the following cases the superior court . . . or, when said court is not in session, any judge thereof, shall make an order vacating the award upon the application of any party to the arbitration: . . . (d) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made."

The basic claim of the plaintiff, as set forth in its memorandum, is that "the award made by the arbitrator . . . is inherently inconsistent, in that it states Connecticut law applies, yet awards $80,000.00 to the claimant when no such award could be permitted under Connecticut law." Specifically, the plaintiff claims that the matter is a contract dispute; that the applicable Connecticut choice of law principle requires that the contract be interpreted in accordance with Iowa contract law; and thus, that only $20,000, not $80,000, is recoverable because Iowa, unlike Connecticut, does not permit the "stacking" of uninsured motorist coverage.

It is to be noted at the outset that the findings of an arbitrator are highly favored in Connecticut. "' "It is the established policy of the courts to regard awards with liberality. Every reasonable

---

[2] No evidence was presented to the court at the hearing to correct, modify or vacate the arbitrator's award; General Statutes § 52-418 (d); the court culled out the conduct of the proceedings from the trial briefs submitted by the parties.

presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings. Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it.'" *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 320.

The plaintiff's argument is that the arbitrator imperfectly executed his duties in that he applied Connecticut's law on "stacking" and not Iowa's law which prohibits "stacking."[3] Because the submission consented to by the parties was a general one, the court need not review beyond the face of either the submission[4] itself or the award. "As we have noted, in deciding whether the arbitrators have exceeded their powers courts need only examine the submission and award to determine whether the award conforms to the submission; . . . [they] 'are not required to review the evidence on which the award was based or to ensure that the judgment of the arbitrators was either factually or legally correct.' *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* [164 Conn. 472,] 478." *Ramos Iron Works* v. *Franklin Construction Co.,* 174 Conn. 583, 590–91.

---

[3] For a discussion of "stacking" or "pyramiding," see Pretzel, Uninsured Motorists (1972 Ed.) § 25.5 (B). See also Neighbor, "Pyramiding Uninsured Motorist Coverage—Has Iowa Joined the Majority?" 23 Drake L. Rev. 746.

[4] The arbitration clause reads as follows: "11. ARBITRATION. If any person making claim hereunder and Allstate do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this coverage, then, upon written demand of such person, the matter or matters upon which such person and Allstate do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. *Such person and Allstate each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this coverage.*" (Emphasis added.)

Despite sufficient case law supporting the preceding argument, the court is compelled to address the merits of the plaintiff's contentions. It does so in an effort to clarify the objections and also because it is the opinion of the court that the findings of the arbitrator were fair, correct and just.

"It is well recognized that the conflict of laws field, and more specifically the choice of law problem have been the subject of much discussion and controversy during recent years. . . . [I]t would be particularly unfortunate to predicate an insured's right to compensation from his company on the combination of the terminology in the endorsement and the fortuity of the accident's location in relation to a state's choice of law rules.[5] Rather, this is another instance where the underlying objective of providing a source of indemnification for injuries the claimant had sustained should be the paramount consideration." Widiss, Uninsured Motorist Coverage (1970 Ed.) § 2.28, p. 58.

The plaintiff claims that because the contract was made in Iowa, the laws of Iowa must control. The court finds that argument to be lacking in merit. As one commentator said in discussing *Hall v. Allied Mutual Ins. Co.*, 261 Iowa 1258: "The court is not impressed with the argument that this is an Iowa contract which should cover all losses for which the Iowa law permits recovery, an argument which has impressed other courts, and accepts the proposition that a motor insuror's liability may vary according to the law of the jurisdiction in which the vehicle is being operated, which some courts seem to find repugnant." "Recent Developments in the Conflict of Laws—Iowa Personal Injury Cases," 23 Drake L. Rev. 47, 50. The question before this

---

[5] For a discussion of choice of law, see 2 Harper & James, Law of Torts (1968 Sup.), p. 300.

court does not truly involve an interpretation of the insurance contracts, but rather how much the defendant is entitled to recover. That is a matter of remedy. "[I]f the insurer ought reasonably to expect that his insured's conduct will have an impact elsewhere, it is only fair and just that the law there should, in the absence of special circumstances, control." Stumberg, Conflict of Laws (3d Ed. 1963), p. 201. Indeed, the Iowa Supreme Court, in deciding an uninsured motorist case on facts quite similar to the case at bar, said: "Plaintiff's contention presents a conflicts problem which we do not believe belongs in the present case. . . . Our present problem is how much defendant is obligated to pay plaintiff under the insurance agreement. Determination of this question does not involve a conflicts question." *Hall* v. *Allied Mutual Ins. Co.,* 261 Iowa 1258, 1264–65.

Having decided that no choice of law question is presented here, we now look to the true issue: What remedy does the law provide the defendant? As previously noted, both vehicles were registered in Connecticut, both drivers were Connecticut residents, and the accident took place in Connecticut.

In *Dickson* v. *Hoffman,* 305 F. Sup. 1040 (D. Kan.), the court said: "Defendant insurance company contends that the law of the District of Columbia controls the interpretation and enforcement of the contract. Whether the contract was entered into in Washington, D.C., or elsewhere, need not be decided. The agreement that all differences arising out of the contract shall be submitted to arbitration relates to the law of remedies, and the law that governs is the law of the forum." In *Gibson* v. *Fullin,* 172 Conn. 407, the Connecticut Supreme Court held (p. 411): "When the rights and liabilities of parties to an action result from

an occurrence involving a significant relationship in another state, the court in which the action is pending must determine whether its own law or the law of the other state shall be applied. We have held that in motor vehicle cases '[t]he creation and extent of liability are fixed by the law of the state in which the tort is committed.' . . . In other words, the law of the state where the tort is committed governs the substantive elements of the cause of action and the law of the forum determines the remedy. . . . This is generally the law of other jurisdictions although there has been some tendency recently to depart from this traditional rule of 'lex loci delicti' in order to place more emphasis on ascertaining the state of 'most significant relationship' or 'center of gravity.' . . . Under this newer approach, the developing rule is still very much in a transitional stage, and the present case presents no compelling reason to abandon the traditional rule."

The Connecticut Supreme Court has recently discussed, and decided in favor of the insureds, the question of whether an insured who is covered by two or more uninsured motorist policies may aggregate them if the insured is injured by an uninsured motorist. *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329; *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463; *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443.

The Semples were insured under family policies which covered four separate vehicles. Uninsured motorist protection was provided for each vehicle and a premium was charged for each. Moreover, under the "General Conditions" clause of the policies it is specifically set forth that "[w]hen two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each. . . ."

In the light of the extensive and permanent injuries sustained by the defendant, it is not likely that an award of $80,000 exceeds the extent of her damages.

For the reasons stated herein, judgment may be and is hereby rendered confirming the arbitrator's award.