**Earl G. SMITH, Administrator of the Estate of Gary Dean Smith, Deceased,**

**v.**

**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY.**

Civ. No. B–78–381.

United States District Court, D. Connecticut.

Jan. 23, 1980.

L. Douglas Shrader, Zeldes, Needle & Cooper, Bridgeport, Conn., for plaintiff.

Snow Gene Mumford, Hartford, Conn., for defendant.

## RULING ON OBJECTION TO MAGISTRATE'S MEMORANDUM OF DECISION

BURNS, District Judge.

Plaintiff, as administrator of the estate of his deceased son, has brought this action in Count One of which he seeks a judgment declaring that the uninsured motorists coverage in an automobile insurance policy issued to him is applicable to, and provides coverage for, all sums which he, as administrator, is legally entitled to recover as damages because of the fatal injuries suffered by his son Gary when the uninsured motorcycle Gary owned and was operating was struck by an uninsured motorist. Defendant refused payment, relying on a provision of the policy which purports to exclude coverage for injury suffered by an insured while occupying a highway vehicle, other than an insured highway vehicle, owned by the named insured or by a relative resident in his household. The plaintiff claims such an exclusion contravenes the laws and public policy of the state of Connecticut and is void or, if the exclusion is found to be valid, a motorcycle is not, as a matter of law, a highway vehicle as that term is used in the defendant's exclusion.

Plaintiff has objected to that portion of the Magistrate's ruling on the cross motions for summary judgment of the respective parties, in which the Magistrate abstained from decision on Count One of the complaint and directed the parties to secure decision thereon from the state courts. Jurisdiction in this action is based on diversity of citizenship, 28 U.S.C. § 1332, and the applicable law is that of the state of Connecticut. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have pointed to no Connecticut cases which address the present issue[1] and the

---

1. Plaintiff has referred the court to the recent decision of the Connecticut Supreme Court, *Stoni v. Wasicki,* Vol. XLI, No. 26, Connecticut Law Journal, p. 5 which, in footnote 3, notes that a motorcycle is expressly excluded from the definition of a "private passenger motor vehicle" by Conn.Gen.Stats. § 38–319(g). This definition, however, by its terms applied to the state's no-fault motor vehicle insurance plan, Conn.Gen.Stats. §§ 38–319 through 38–351a and the comparative negligence statute applicable thereto (§ 52–572h) and does not appear to extend to the uninsured motorist coverage statutory provisions, §§ 38–175a through 38–175e. Cf. *Citrano v. Berkshire Mutual Insurance Co.,* 171 Conn. 248, 368 A.2d 54 (1976) holding a motorcycle to be a motor vehicle within the provisions of § 38–175c which requires automobile liability policies to provide coverage for insureds legally entitled to recover damages

court has found none. This is then, as the Magistrate noted, an important and unresolved question under Connecticut law.

Consideration of the propriety of the Magistrate's ruling must at the outset examine the nature of the relief sought, a declaratory judgment. "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so . . . of course, a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. 'A declaratory judgment, like other forms of equitable relief, should·be granted only as a matter of judicial discretion exercised in the public interest' . . ." *Public Affairs Press v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 583, 7 L.Ed.2d 604 (1961) (citations omitted).[2] The question then, is whether abstention in this case would be an abuse of judicial discretion.

In his claim that abstention here is such an abuse, plaintiff points to the Supreme Court decision of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975) which, on pages 814 to 817, 96 S.Ct. 1236, sets forth three categories of cases where declination or postponement of the exercise by a district court of its jurisdiction is appropriate: (1) cases involving federal constitutional issues which might be mooted by state court determination of state law; (2) cases in which "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; (*id.* 814, 96 S.Ct. 1244) and (3) cases seeking to restrain state criminal proceedings, state nuisance proceedings antecedent to state criminal proceedings or collection of state taxes. Clearly, the first and third categories are inapplicable to the instant case and

abstention is justified, if at all, under category (2).[3]

The uninsured motorist coverage provisions of the Connecticut statutes were initially enacted in 1967 (Public Act 510), the áct subsequently being modified in 1969 (P.A. 202), 1971 (Public Acts 364 and 767); and 1973 (Public Act 73–212). These provisions of the statutes, and regulations promulgated thereunder by the Connecticut Insurance Commissioner, have been the subject of at least seven decisions of the Connecticut Supreme Court, none of which address the present issue or point clearly to its resolution. See *Fidelity & Casualty Co. v. Darrow*, 161 Conn. 169, 286 A.2d 288 (1971); *Simonette v. Great American Insurance Co.*, 165 Conn. 466, 338 A.2d 453 (1973); *Weingarten v. Allstate Insurance Co.*, 169 Conn. 502, 363 A.2d 1055 (1975); *Pecker v. Aetna Casualty & Surety Co.*, 171 Conn. 443, 370 A.2d 1006 (1976); *Roy. v. Centennial Insurance Co.*, 171 Conn. 463, 370 A.2d 1011 (1976); *Rosnick v. Aetna Casualty & Surety Co.*, 172 Conn. 416, 374 A.2d 1076 (1977), and *Safeco Insurance Companies v. Vetre*, 174 Conn. 329, 387 A.2d 539 (1978).

■ The difficulty of the state law question alone is insufficient basis for the federal court to decline to act, *Meredith v. Winter Haven*, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9 (1943) but it is a factor of significance in the exercise of discretion by the court when policy considerations of importance to the state are involved and where the issue of state law can more definitively be resolved by the state courts.

■ Although in *Brown v. Employers Mutual Liability Co.*, Civil No. B77–255, this court exercised its discretion to render a declaratory judgment in a case also involving the Connecticut uninsured motorist law, such action should not be construed to preclude an independent assessment of the propriety of abstention in other cases of first

---

from owners or operators of uninsured "motor vehicles".

**2.** *See also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 671, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1977) (Brennan, J., dissenting).

**3.** For a discussion of category (2), see *Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 564 (2d Cir. 1978).

impression, raising new issues of construction under Connecticut's uninsured motorist law. In this case where the accident involved and the bringing of this case is comparatively recent and the state law questions difficult of resolution, involving an area of the law in which the state's interest is evidenced by significant legislative activity and administrative regulation and where the state courts have furnished no clear guidance as to the immediate question, such assessment supports the ruling of the Magistrate which is accordingly approved and adopted.

SO ORDERED.

## MEMORANDUM OF DECISION

Plaintiff's automobile liability policy with the defendant insurer includes protection against injury by uninsured motorists, a provision mandated by state law. See Conn.Gen.Stat. § 38–175c. Coverage extends to resident members of the household, but defendant has denied coverage for fatal injuries suffered by plaintiff's son while driving his uninsured motorcycle when struck by an uninsured motorist in Bridgeport, Connecticut on August 18, 1978. That disclaimer rests on a policy exclusion for accidents involving vehicles owned, but not insured, by the plaintiff or resident relatives. The validity of such a limitation on protection otherwise afforded against the risk of uncompensated harm caused by an uninsured motorist is centrally at issue in the instant declaratory judgment action, presenting an important and unresolved question of public policy under Connecticut law. This Court is of the view that it may and should direct the parties to secure authoritative decision from the state courts.

The requisite independent jurisdictional basis for seeking the federal statutory remedy of declaratory judgment, see *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), is here supplied by diversity of citizenship, 28 U.S.C. § 1332, and in all such cases state law of course provides the rule of decision, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If confronted with an open question in a diversity case, the federal court naturally must attempt to estimate what the state court would decide; that exercise may dispose of the immediate controversy, but there can be no guarantee of the forecast's accuracy in terms of the state tribunal's actual resolution of the issue in another case. The potential for inconsistency and attendant unfairness is obvious, ironically highlighted when it is the local citizen who invokes a ground of federal court jurisdiction originally intended to assure even-handed treatment to the out-of-stater. As a general proposition, such familiar anomalies of the statutory grant of diversity jurisdiction are subject to correction only by the Congress. In the exceptional diversity case, however, a federal court may on its own initiative properly decline to guess at the course of state law; this suit is one example.

Federal courts "may" render a declaratory judgment, 28 U.S.C. § 2201, and it has been long settled that entertaining such a claim for relief is indeed discretionary. See, e. g., *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Larson v. General Motors Corp.*, 134 F.2d 450, 453 (2 Cir.) (L. Hand, J.), *cert. denied*, 319 U.S. 762, 63 S.Ct. 1318, 87 L.Ed. 1713 (1943); Borchard, Declaratory Judgments at 312 (2d Ed. 1941). Reasoned limits are necessarily implied, see, e. g., *Larson v. General Motors Corp., supra*, but the court's discretion may be generously employed. If declaratory relief is otherwise "appropriate", for example, the mere "existence of another adequate remedy does not preclude" recourse to declaratory judgment, Rule 57, Fed.R.Civ.P., and the court may proceed to consider whether a different type of relief or a different proceeding would be more or less "effective or efficient, and hence whether the declaratory judgment action would serve a useful purpose", 6A Moore's Federal Practice ¶ 57.-08[3] at 57–42 (2d Ed. 1974), see also Borchard, *supra* at 302–303.

The existence of power to act obviously does not impel its exercise, and a federal court may similarly withhold declaratory

relief when circumstances warrant. When the other available remedy consists of another lawsuit already pending, it is recognized as a more general principle in any event that this Court may refuse to engage in potentially wasteful or duplicative proceedings, see, e. g., *Mottolese v. Kaufman,* 176 F.2d 301, 302–303 (2 Cir. 1949) (L. Hand, J.), cf. *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).

In the specific context of the diversity suit for declaratory judgment, the trial court has been pointedly directed to "ascertain whether the questions in controversy . . . can better be settled in the proceeding pending in the state court", *Brillhart v. Excess Ins. Co., supra,* 316 U.S. at 495, 62 S.Ct. at 1176, cf. also *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 126, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Indeed, the Court of Appeals for this Circuit has further indicated that the district court plainly "should not" proceed if at the outset it appears that "the same issues are being presented contemporaneously in state court", *Beacon Construction Co. v. Matco Electric Co.,* 521 F.2d 392, n. 13 at 399 (2 Cir. 1975), citing *Fay v. Fitzgerald,* 478 F.2d 181 (2 Cir. 1973).

There is no earlier-commenced, pending suit in state court in this instance. Although that factor is to be weighed in the balance, see *Beacon Construction Co., supra* at 399, plaintiff's resorting first to this forum does not dictate the grant of relief without regard to any other circumstance. Such a wooden approach would be hardly consistent with the discretionary nature of the remedy; it would seem instead that "no hard and fast rule can be made for determining the propriety of granting declaratory relief in diversity cases", *id.* at 398. The question is again whether the overall circumstances counsel for or against federal court relief.

The most immediately evident countervailing factor is the difficulty of the state law issue involved, and that element is highly important, if presumably not alone determinative. The Supreme Court did

long ago declare that federal courts are not free to disregard invocation of legislatively conferred diversity jurisdiction "merely because the answers to the questions of state law are difficult or uncertain", *Meredith v. Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). It cannot be doubted, however, that "difficulty" is at the very least a significant factor, as first clearly indicated after *Meredith* by the Supreme Court's otherwise puzzling disposition of *Louisiana Power & Light Co. v. City of Thibodeaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), and *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). In each of those cases, a district court had refused exercise of diversity jurisdiction to resolve a dispute affected by state eminent domain law; a divided Court approved of that course in *Thibodeaux* and disapproved in *Allegheny,* through majority opinions respectively authored by two different Justices and announced on the same date with no explicit reconciliation of the holdings. Significantly, the sole readily discernible and substantial ground of comparison was that the state law was thought "highly doubtful" in *Thibodeaux* and "clear" in *Allegheny, Louisiana Power & Light Co. v. City of Thibodeaux, supra,* 360 U.S. at 31, 79 S.Ct. 1070 (Stewart, J., concurring). In more recently noting the cautionary "mere difficulty" language of *Meredith,* the Court has actually encouraged formal certification to the state courts when that procedure is locally available and "there is doubt as to local law", because such referral may "in the long run save time, energy, and resources and helps build a cooperative judicial federalism", *Lehman Brothers v. Schein,* 416 U.S. 386, 390–391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).

Those considerations and "long run" economies have logical application even absent the convenient device of certification, and where—as in Connecticut—that particular procedure is not available, the Supreme Court still has not hesitated to refer the parties in diversity cases to state court if the state law issue is novel and important, see *Kaiser Steel Corp. v. W. S. Ranch Co.,*

391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968). The Court did there mention the pendency of a state court declaratory judgment action in further predicting that the local law determination would be "forthcoming soon", *id.* at 594, 88 S.Ct. 1753, but the conclusion that federal abstention was appropriate did not turn on prior existence of state litigation; as in the instant matter, there was no state proceeding pending when the controversy was brought before the district court—indeed, in *Kaiser* no state suit was instituted until after an adverse court of appeals decision on the merits, see *W. S. Ranch Co. v. Kaiser Steel Corp.*, 388 F.2d 257, 262 (10 Cir. 1968) (on petition for rehearing).

But the "mere difficulty" principle has not been disavowed—and should not be, lest a recognized discretion to decline to hear the exceptional case be too easily converted to a routine denial of access to federal court inconsistent with the jurisdictional statute. Accordingly, it cannot be hastily inferred from the latest comment of our Court of Appeals in entertaining the merits of the appeal in a diversity action for damages, "the determination of Connecticut law is not sufficiently difficult to warrant remitting the parties to . . . [the state] courts", *Marina Management Corp. v. Brewer*, 572 F.2d 43, 46 (2 Cir. 1978), that the Second Circuit would summarily refuse to proceed with an appeal simply because the underlying state law rule was unclear. At a minimum, that course would conflict with any genuine concept of discretion, which can rarely depend exclusively on any single factor; as previously observed, there is "no hard and fast rule", *Beacon Construction Co., supra* at 398.

A situation of already existing state proceedings has obvious potential for duplication, waste and abuse, ordinarily suggesting that federal stay is advisable, see *id.*, n. 13 at 399. Absent that circumstance, the uncertainty of state law controlling decision in a diversity case does remain a centrally pertinent factor in informing this Court's established discretion to afford or withhold the remedy of declaratory judgment. That factor weighs heavily here, since decision in

this case will not be reached by the application of settled rules to a particular state of facts, but through attempted resolution of legal issues not yet considered by the Connecticut courts. Nor is decision on the law plainly foreshadowed by earlier state opinions; as counsel remarked in oral argument, the federal judicial process here is one of concededly "trying to crystal-ball" what the state supreme court would do.

The problem, moreover, is not just one of "mere difficulty" in divining state law. Beyond the usual concern that the district court will "guess wrong" either way to the detriment of one party's interests, it should be stressed that favorable federal court decision here will not even necessarily yield lasting vindication to the defendant; a district court victory in this case furnishes no authoritative statement of Connecticut law barring a second challenge by another policyholder in state court. In addition, the question is both likely to recur and of more than "private" moment; apart from the immediate consequences for these litigants, recognition that the disputed scope of Connecticut's uninsured motorist law is of considerable general importance strongly indicates that the interests of justice and sound judicial administration will be better served by requiring definitive state court litigation, cf. *Kaiser Steel Corp., supra.*

Federal abstention on the court's own initiative at a late stage of suit involves competing fairness considerations, cf. *Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* 390 U.S. at 126, 88 S.Ct. 733, *Meredith, supra.* No such situation is presented here; the federal action is newly brought and counsel's thorough legal research in no sense wasted. The tragic loss at issue itself occurred but seven months ago, and there is no reason to suppose that plaintiff cannot pursue an equivalent declaratory judgment action in state court, see, e. g., *Rosnick v. Aetna Casualty & Surety Co.,* 172 Conn. 416, 374 A.2d 1076 (1977), with resort to expediting summary judgment procedures. It is patent that stay would be appropriate now if requested by defendant, see *Phillips, Nizer, Benjamin,*

*Krim & Ballon v. Rosentiel,* 490 F.2d 509, 516–517 (2 Cir. 1973), and absent such prompt request the Court has an independent obligation to determine whether the discretionary remedy at stake should be afforded in this forum.

Since this Court holds the view that the parties' controversy is better resolved by conclusive state court adjudication of the significant issues of Connecticut law involved, plaintiff's claim for declaratory judgment under the instant complaint's first count and the parties' attendant motions for summary judgment are hereby denied without prejudice to the commencement of state court suit and assertion there of the parties' contentions on the merits. Jurisdiction of the second count's distinct appended claim for damages is retained.