JAMES WILSON *v.* SECURITY INSURANCE COMPANY
(13614)

SECURITY INSURANCE COMPANY *v.* JAMES WILSON
(13618)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

Argued November 1, 1989—decision released January 30, 1990

*David M. Reilly,* with whom was *Peter B. Reilly,* for the appellant-appellee (James Wilson).

*Susan M. Cormier,* with whom was *Wesley W. Horton,* for the appellee-appellant (Security Insurance Company).

COVELLO, J. These consolidated appeals followed a judgment of the trial court confirming an uninsured motorist arbitration award. The principal issue is whether coverage for uninsured motorists contained in a fleet automobile liability policy may be combined or "stacked" in determining the total amount of coverage available to a single claimant. We conclude that such a result is beyond the reasonable expectations of the parties to the insurance contract and that "stacking" is inappropriate in the context of fleet automobile liability policies. We therefore remand the matter to the trial court with direction to modify the award accordingly.

The relevant facts are not in dispute. On January 1, 1982, the defendant, Security Insurance Company, had in force a business automobile liability policy insuring thirty-one vehicles owned by the town of Woodbridge. The policy contained an endorsement providing uninsured motorist coverage in the amount of $40,000 for each vehicle. Each vehicle was separately listed on the policy. The policy also contained a separate schedule of premiums for each vehicle that included a $3 or $5 charge per vehicle for the $40,000 of uninsured motorist

coverage. The town paid a total of $137 for the uninsured motorist coverage on all thirty-one vehicles. The policy further contained a provision declaring that any sums payable under the uninsured motorists endorsement to the policy would be reduced by "[a]ll sums paid or payable under any workers' compensation . . . law."

On January 1, 1982, the plaintiff, James Wilson, was a Woodbridge police officer who was assigned to operate a police car that was covered by the defendant's policy. While on duty, and while standing in the vicinity of his parked vehicle, the plaintiff was struck and severely injured by a hit and run motorist.

Unable to agree on either the amount of uninsured motorist coverage available under the defendant's policy or whether the plaintiff was even covered by the policy, the parties submitted the issues to arbitration. They stipulated that the total value of the plaintiff's claim was $350,000, that the sum of $74,033.39 had been paid in workers' compensation benefits, and that "stacking" of coverage, if applicable, was limited to the six vehicles assigned to the police department. The arbitration panel concluded that the plaintiff was a "Named Insured" under the policy and that its uninsured motorist provisions were applicable to him. The panel further concluded that, since the six vehicles were listed on the policy and a separate premium charged for each, "stacking" of the insurance coverage was proper. From the $240,000 maximum limit available (six vehicles X $40,000), the panel subtracted $74,033.39 in previously paid workers' compensation benefits. It concluded, therefore, that the plaintiff was due the sum of $165,966.61.

The defendant filed an application in Superior Court seeking to set aside the arbitration award in its entirety

pursuant to General Statutes § 52-418.[1] The plaintiff filed a separate application seeking to correct only that portion of the decision that reduced the award by the amount of the previously paid workers' compensation benefits. The trial court, *Meadow, J.,* confirmed the award in its entirety and rendered judgment denying both applications. The defendant appealed and the plaintiff cross appealed to the Appellate Court. We thereafter transferred both matters to ourselves pursuant to Practice Book § 4023.

On appeal, the defendant claims that the trial court erred in concluding: (1) the plaintiff was a "named insured" under the policy; and (2) "stacking" was permitted in the context of fleet automobile liability policies. In view of our conclusion that the trial court erred by allowing the "stacking" of the fleet automobile uninsured motorist coverage, we need not address the first issue raised.

In *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 569 A.2d 541 (1990), we examined the applicability of "stacking" principles in the context of fleet insurance contracts. We defined such a contract as "any insurance policy designated as a 'fleet' or 'garage' policy, or any insurance policy covering a number of vehicles owned by a business, a *governmental entity,* or an institution." (Emphasis added.) Id., 530. We concluded that "[t]he notion of 'stacking' as an objectively reasonable expectation of the parties [did] not . . . extend to fleet insurance contracts." Id. The reason was that it was simply not credible that "a company or an

---

[1] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any one of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

employee of a company having a fleet of . . . vehicles would reasonably expect the coverage on [any one vehicle] at the time of the collision with an uninsured [or underinsured] motorist to be [a multiple of the total number of vehicles in the fleet] . . . ." *Linderer* v. *Royal Globe Ins. Co.,* 597 S.W.2d 656, 661 (Mo. App. 1980).

In the present case, the town of Woodbridge held a fleet policy insuring thirty-one vehicles. Each vehicle had uninsured motorist coverage with stated limits of $40,000. If "stacking" were permitted, $40,000 times thirty-one vehicles would produce $1,240,000 of uninsured motor vehicle coverage available for *each* vehicle. Followed to its logical conclusion, this would mean that the town of Woodbridge had purchased a total of $38,440,000 worth of uninsured motorist coverage for a premium of $137. " ' "Clearly such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question." ' *Ohio Casualty Ins. Co.* v. *Stanfield,* 581 S.W.2d 555, 559 (Ky. 1979), quoting *Lambert* v. *Liberty Mutual Ins. Co.,* 331 So. 2d 260, 265 (Ala. 1976) . . . ." *Cohn* v. *Aetna Ins. Co.,* supra, 531. Even the present parties, in their unexplained stipulation limiting "stacking" principles to the six vehicles assigned to the Woodbridge police department, seemed to have sensed that the proposition is simply unsupportable when applied to large numbers of vehicles.

In his cross appeal, the plaintiff claims that the trial court erred in allowing the defendant a credit for workers' compensation benefits already paid to him in determining the amounts due under the uninsured motorist coverage. The plaintiff concedes, as he must, that the uninsured motorists endorsement to the policy here in issue contained a specific provision reducing any amounts payable under the uninsured motorists endorsement by any sums paid under the workers' compensa-

tion laws.[2] Further, § 38-175a-6 (d) of the Regulations of Connecticut State Agencies specifically authorizes uninsured motorist benefits to be reduced by the amount of such payments.[3]

The plaintiff argues, however, that: (1) his *damages* are for pain, suffering, disability, and loss of earning capacity, none of which are recoverable under the workers' compensation laws, and therefore, his damages have not been paid and thus, no reduction in uninsured motorist coverage is required under § 38-175a-6 (d); and (2) General Statutes § 38-175c, the statute requiring uninsured motorist coverage, provides a minimum limit of $20,000 for such coverage, a base amount, the plaintiff contends, which cannot be further eroded by the setoffs contained in § 38-175a-6 (d). To the extent that such setoffs exist, the plaintiff claims that the commissioner was without authority to adopt such a regulation, which is contrary to the minimum coverage required by § 38-175c. We do not agree.

---

[2] The uninsured motorists insurance endorsement provides under "E. OUR LIMIT OF LIABILITY" that "[a]ny amount payable under this insurance shall be reduced by . . . All sums paid or payable under any workers' compensation . . . law . . . ."

[3] Section 38-175a-6 of the Regulations of Connecticut State Agencies provides in relevant part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS . . . . (d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14-112 of the general statutes, except that *the policy may provide for the reduction of limits to the extent that damages have been* (1) paid by or on behalf of any person responsible for the injury, (2) *paid or are payable under any workers' compensation or disability benefits law,* or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment." (Emphasis added.)

We see nothing in the language of regulation § 38-175a-6 (d) that quantifies the kinds of damages that must be paid before a valid reduction in uninsured motorist benefits may occur by reason of any payments made pursuant to the workers' compensation law. If damages are paid pursuant to the workers' compensation law, the uninsured motorist coverage may be reduced accordingly. General Statutes § 38-175c contains no mandate that uninsured motorist coverage benefits may not be reduced.

As we have earlier observed, "[t]he plain words of the statute . . . [§ 38-175c] simply require that each policy provide a minimum level of uninsured motorist coverage 'for the protection of persons insured thereunder.' The statute does not require that uninsured motorist coverage be made available when the insured has been otherwise protected . . . or when the uninsured motorist has other resources available to protect the insured. Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, *or that the coverage limits shall not be reduced under appropriate circumstances.* The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies; the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of 'protection.' " (Emphasis added.) *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 472–73, 370 A.2d 1011 (1976).

"Section 38-175c does not specifically prohibit the adoption of a regulation permitting the reduction of uninsured motorist coverage, whereas § 38-175a explicitly authorizes the commission to adopt regulations relating 'to the insuring agreements, exclusions, conditions and other terms applicable to . . . uninsured motorists coverages.' In the construction of stat-

utes, great deference is to be accorded to the construction given the statute by the agency charged with its enforcement." Id., 473. We are also mindful of the proposition that the legislature is presumed to be aware of the judicial construction placed upon its enactments; *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 395 n.7, 446 A.2d 1059 (1982); and despite our earlier observations concerning the purport of these statutes, we find no amendments that would support a contrary construction.

"The automobile liability insurance business is one which is extensively regulated; *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 473, 338 A.2d 453 [1973]; and judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state. In view of the very broad grant of regulatory authority to the insurance commissioner, we are not persuaded that the commissioner was without authority to adopt regulation § 38-175a-6 (d)." *Roy* v. *Centennial Ins. Co.,* supra.

There is error on the appeal and the matter is remanded to the trial court with direction to vacate the judgment and to modify the arbitration award to reflect underinsured motorist coverage in the amount of $40,000; there is no error on the cross appeal.

In this opinion the other justices concurred.