LUMBERMENS MUTUAL CASUALTY COMPANY *v.*
JILL HUNTLEY
(14391)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued March 25—decision released July 21, 1992

*Michael Brodinsky,* for the appellant (plaintiff).

*Herbert Watstein,* for the appellee (defendant).

BERDON, J. The principal issue in this appeal is whether an insurer, who provides underinsured motorist coverage, may limit its liability by taking credit for a personal payment made by an underinsured tortfeasor to an insured. The defendant insured, Jill E. Huntley, was seriously injured when her car was struck by an automobile operated by Michael R. Panus. After he had exhausted the limits of his liability policy, Panus personally paid the defendant the sum of $50,000 pursuant to a settlement agreement. The defendant's insurer, the plaintiff, Lumbermens Mutual Casualty

Company, sought credit for the payment in the form of a reduction of its liability for underinsured motorist coverage. This appeal follows the trial court's confirmation of the arbitration panel's award in favor of the defendant.[1] We now reverse.

The parties agreed to the following facts. On May 25, 1989, the defendant was driving home when an automobile driven by Panus crossed over into her lane and struck her vehicle head-on. On April 18, 1991, in her suit against Panus, the trial court rendered a judgment of $1,000,000 in favor of the defendant. Panus was insured by Allstate Insurance Company, which paid the full $100,000 limit of its policy to the defendant. Panus, himself, then paid an additional $50,000 to the defendant.

The defendant's underinsured motorist policy issued by the plaintiff provided coverage up to $300,000. Following Panus' personal payment, a dispute arose between the defendant and the plaintiff as to whether the plaintiff could reduce its liability to the defendant by $50,000, the amount of the tortfeasor's personal payment, in addition to the $100,000 reduction for the amount paid by the tortfeasor's liability carrier. The defendant's insurance policy provided: "Any amounts otherwise payable for damages under this [underinsured] coverage shall be reduced by all sums: 1. Paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible."

Pursuant to the terms of the policy, the parties submitted to arbitration the sole legal issue of whether General Statutes (Rev. to 1989) § 38-175c, now reorganized and recodified as General Statutes § 38a-336 (b) and (d),[2]

[1] The plaintiff appealed to the Appellate Court and we transferred the appeal to this court in accordance with Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes (Rev. to 1989) § 38-175c, now reorganized and recodified as General Statutes § 38a-336 (b) and (d), provides in pertinent part: "(a) Every [automobile liability insurance] policy shall provide insurance,

and § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies[3] permit the plaintiff to reduce its coverage by the $50,000 paid by the tortfeasor. The parties stipulated to the fact that the tortfeasor had personally paid the sum of $50,000 to the defendant. In a split decision, the arbitrators decided that the plaintiff was not entitled to deduct the $50,000 payment by the tortfeasor.

The trial court denied the plaintiff's application to vacate the arbitrators' award. Relying on *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 530 A.2d 171 (1987),[4] the trial court concluded that the plaintiff could not take credit for the tortfeasor's payment because it was a personal payment, not a payment made by his automobile insurance liability carrier.

On appeal, the plaintiff claims that the trial court improperly upheld the arbitrators' decision that the tortfeasor's personal payment could not be deducted from its payment of underinsured motorist coverage to the defendant. The plaintiff argues that the setoff of the tortfeasor's payment is warranted both by

herein called uninsured motorist coverage . . . .

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[3] Section 38-175a-6 (d) of the Regulations of Connecticut State Agencies provides in pertinent part that an insurance policy "may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury."

[4] See footnote 10, infra.

§ 38-175a-6 (d) of the regulations, which specifically permits "reduction of limits to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury," and by the defendant's insurance policy, which requires reduction of all sums paid "by or on behalf of persons or organizations who may be legally responsible." We agree with the plaintiff that an underinsured motorist carrier may limit its liability by taking credit for a tortfeasor's personal payment to the insured, and we reverse the trial court.

In reviewing compulsory arbitration cases, this court must conduct a de novo review of the arbitrators' interpretation and application of the law. *American Universal Ins. Co.* v. *DelGreco,* supra, 191. The defendant argues that § 38-175a-6 (d) (1) of the regulations, to the extent that it allows for the setoff, is inconsistent with the language and intent of § 38-175c (b) (1), which requires an insurance carrier to pay its insured "after the limits of liability under all bodily injury liability bonds or insurance policies . . . have been exhausted . . . ." The defendant contends that the legislature, in amending § 38-175c to include subsection (b) (1), impliedly repealed § 38-175a-6 (d) (1) of the regulations.[5]

We begin our analysis with the history and relationship between § 38-175c and § 38-175a-6 (d) (1) of the regulations. Section 38-175c, which provides that all automobile liability policies must include uninsured motorist coverage, was first enacted in 1967 and did not prohibit the reduction of uninsured motorist cover-

---

[5] The defendant also claims that if the plaintiff is entitled to reduce its payment to her by the amount of the tortfeasor's payment, the plaintiff should be allowed credit for the tortfeasor's cash payment of $31,000 only, and not for his promissory note of $19,000. The record clearly indicates, however, that both parties stipulated to the fact that the tortfeasor had *paid* the sum of $50,000 to the defendant. Having never submitted this issue of fact for arbitration, the defendant cannot raise the issue for the first time on appeal.

age by the amount of a tortfeasor's personal payment. Public Acts 1967, No. 510. Pursuant to General Statutes § 38-175a,[6] the insurance commissioner adopted regulations, effective January 1, 1968, which provide in pertinent part: "[The automobile liability insurance] policy may provide for the reduction of limits to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury . . . ." Regs., Conn. State Agencies § 38-175a-6 (d) (1);[7] *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 286 A.2d 288 (1971).

In 1979, § 38-175c was amended to include subsection (b) (1), which requires an insurance carrier to provide underinsured motorist coverage "after the limits of liability under all bodily injury liability bonds or insurance policies . . . have been exhausted . . . ." The legislative history indicates that § 38-175c was amended solely for the purpose of providing underinsured motorist coverage. Public Acts 1979, No. 79-235; 22 S. Proc., Pt. 5, 1979 Sess., p. 1354; 22 H.R. Proc., Pt. 16, 1979 Sess., p. 5341.[8] The regulations that apply to uninsured

[6] General Statutes (Rev. to 1989) § 38-175a, now reorganized and recodified as General Statutes § 38a-334, provides in pertinent part: "The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies . . . . Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorist coverages under such policies . . . ."

[7] Portions of § 38-175a-6 (d) of the Regulations of Connecticut State Agencies were subsequently amended, but the language of subsection (d) (1) was not changed. The amended regulations went into effect February 1, 1975.

[8] Senator James J. Murphy, Jr., explained during the Senate proceedings that this bill requires "that once the liability insurance of the so-called responsible or negligent party has been exhausted, if there is additional coverage under one's uninsured motorists plan, then payment under that program would be triggered and allow for the greater recovery for the insured . . . ." 22 S. Proc., Pt. 5, 1979 Sess., p. 1354. Representative Silvio A. Mastrianni noted during the proceedings in the House of Representatives that the bill "requires coverage be provided against the underinsured motorist." 22 H.R. Proc., Pt. 16, 1979 Sess., p. 5341.

motorist coverage also apply to underinsured motorist coverage.[9] In 1983, § 38-175c was amended further to require that underinsured motorist coverage equal liability coverage. Public Acts 1983, No. 83-461. Neither amendment, in 1979 or in 1983, prohibited the setoff of a tortfeasor's personal payment.

With this background in mind, we approach the issue of whether the plaintiff is entitled to a credit for the tortfeasor's payment. First, as we noted above, the sole reason for amending § 38-175c to include subsection (b) (1) was to provide for underinsured motorist coverage and not to prohibit an insurance carrier from reducing underinsured motorist coverage when appropriate. The obvious purpose of the language of § 38-175c (b) (1) on which the defendant relies—namely, that the insurer must pay its insured "after the limits of liability . . . have been exhausted"—is to trigger the point at which the underinsured motorist policy takes effect.

Second, although this is a question of first impression, our conclusion that an underinsured motorist carrier may limit its liability by taking credit for a tortfeasor's personal payment to the insured is supported by our previous analysis and interpretation of both General Statutes § 38-175c and § 38-175a-6 (d) of the regulations. In *Wilson* v. *Security Ins. Co.*, 213 Conn. 532, 538–39, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990),[10] we deter-

[9] "Since underinsured motorist coverage, as defined in General Statutes § 38-175c, can be determined only by reference to and in comparison with the insured's uninsured motorist coverages, and since claim is made against an insured's uninsured motorist coverage after it is determined that the at-fault party is underinsured, the regulations which apply to uninsured motorist coverage must equally apply to underinsured motorist coverage. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 399–400, 446 A.2d 1059 (1982)." (Internal quotation marks omitted.) *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 210–11, 603 A.2d 385 (1992).

[10] To support her position, the defendant relies primarily on our holding in *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 530 A.2d 171

mined that § 38-175a-6 of the regulations, which also allows setoffs for workers' compensation benefits, is consistent with the coverage requirements of § 38-175c, the statute at issue in the present case. We also observed that General Statutes § 38-175c "does not require that uninsured motorist coverage be made available when the insured has been otherwise protected . . . or when the uninsured motorist has other resources available to protect the insured. Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, *or that the coverage limits shall not be reduced under appropriate circumstances.* . . . *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 472–73, 370 A.2d 1011 (1976)." (Emphasis in original; internal quotation marks omitted.) *Wilson* v. *Security Ins. Co.*, supra, 538. We further noted that "[s]ection 38-175c does not

---

(1987). There, we held that General Statutes § 38-175c and § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies did not allow an insurer credit for payments to its insured pursuant to a dram shop policy. Id., 199. We explained in *DelGreco* that General Statutes § 30-102 "establishes a cause of action that did not exist at common law." *American Universal Ins. Co.* v. *DelGreco*, supra, 198, quoting *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 348–49, 493 A.2d 184 (1985). General Statutes (Rev. to 1983) § 30-102 provides in pertinent part: "If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured . . . ." Under § 30-102, which creates a form of strict tort liability, there is no need to establish a causal relation between the sale of liquor and the injury. *American Universal Ins. Co.* v. *DelGreco*, supra, 199; *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 349. A dram shop payment is "made on behalf of a liquor establishment which serves alcohol to an intoxicated person who thereafter causes injury to a third party." *American Universal Ins. Co.* v. *DelGreco*, supra. Because § 30-102 does not require proof of causation, we concluded in *DelGreco* that a payment by a dram shop policy is not a payment made "by or on behalf of any person responsible for the injury" as is required by the regulation in order to invoke the setoff. Id. In contrast, the issue in this case is whether setoff exists when the payment is made *by a responsible party.* "Responsible party," as used in the regulations, clearly refers to the tortfeasor who caused the injury to the insured. Thus, our holding in *DelGreco* is inapposite to this case.

specifically prohibit the adoption of a regulation permitting the reduction of uninsured motorist coverage, whereas § 38-175a explicitly authorizes the commission to adopt regulations relating to the insuring agreements, exclusions, conditions and other terms applicable to . . . uninsured motorists coverages.'' (Internal quotation marks omitted.) Id. Here, as in *Wilson,* we conclude that § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies, which allows the setoff of a tortfeasor's personal payment, is consistent with the coverage requirements of General Statutes § 38-175c.

Furthermore, the legislature is presumed to be aware of the judicial construction placed upon its enactments. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 395 n.7, 446 A.2d 1059 (1982).[11] Since 1979, when underinsured motorist coverage was mandated, § 38-175c has been amended five times, yet, the legislature has never taken action to prohibit an underinsured motorist carrier from reducing payment to its insured in accordance with the regulations. We can find nothing to support the claim that the legislature intended a contrary construction of the statute. We hold that an uninsured motorist carrier may limit its liability by taking credit for a payment made by a tortfeasor to the insured.

The judgment of the trial court is reversed and the case is remanded to the trial court with the direction to grant the application to vacate the arbitration award.

In this opinion the other justices concurred.

---

[11] "Regulations issued by the insurance commissioner to implement the statutes governing uninsured motorist coverage are presumed valid and have the force and effect of a statute." *Dugas* v. *Lumbermens Mutual Casualty Co.,* 217 Conn. 631, 641, 587 A.2d 415 (1991); *Travelers Ins. Co.* v. *Kulla,* 216 Conn. 390, 399, 579 A.2d 525 (1990); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 449, 370 A.2d 1006 (1976). The rule disfavoring implied repeal of a statute applies to the repeal of a regulation issued pursuant to a statute, especially when the regulation has been approved by the legislative regulation review committee, as in the instant case. *Dugas* v. *Lumbermens Mutual Casualty Co.,* supra.