[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On January 12, 1993, this court issued a Memorandum of Decision in the above-captioned matter in which the court decided that the underlying arbitration award should be confirmed pursuant to General Statutes 52-417 because plaintiff had not filed its Application to Vacate within thirty days from the date he was notified of the arbitration award. Plaintiff had received notification of the arbitration award on July 31, 1992, and plaintiff's application was file-stamped by the clerk's office on September 3, 1992. Accordingly, the court concluded that plaintiff's application did not comply with the thirty-day statutory limitation found in General Statutes 52-420(b).
On January 15, 1993, plaintiff filed a Motion to CT Page 2737 Open Judgment, Reargue and Reconsider, and the matter was heard at short calendar on February 8, 1993.
"An application to vacate an arbitration award triggers special statutory proceedings that are not civil actions." (citation omitted.) Middletown v. Police Local, No. 1361, 187 Conn. 228, 231, 445 A.2d 322 (1982). General Statutes 52-420 governs motions to confirm, vacate or modify arbitration awards. Subsection (b) provides that "[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." (Emphasis provided.) Accordingly, in reconsidering the issue of whether plaintiff's application was timely, the court must construe when such a motion is considered to be "made" pursuant to the statute.
A civil action is commenced on the date that the writ is served. Tuohey v. Martinjak, 119 Conn. 500, 501,177 A. 721 (1935). However, as indicated, supra, "proceedings brought pursuant to 52-420 to confirm, modify or vacate arbitration awards are not civil actions within the meaning of title 52." Waterbury v. Waterbury Police Union, 176 Conn. 401,408, 407 A.2d 1013 (1979); Fishman v. Middlesex Mutual Assurance Co., 4 Conn. App. 339, 344, 494 A.2d 606 (1985) (generally arbitration proceedings have "not been viewed as encompassed within the concept of civil actions.").
In Boltuch v. Rainaud, 137 Conn. 298, 77 A.2d 94
(1950), the issue was whether notice of the pendency of an application or motion to vacate, modify or correct an arbitration award must be given to the adverse parties within thirty days of the notice of the award. Id., 299. Plaintiffs had received notice of an arbitration award on May 25, 1949, and, on June 22, 1949, plaintiffs filed a motion to vacate, and paid their entry fee to the clerk; however, defendants' counsel did not accept service of the motion until June 30, 1949. Id. Nonetheless, the court determined that plaintiffs' motion had been "made" within the thirty-day statutory time limit. Id., 299.
A review of the court file demonstrates that plaintiff's application to modify or vacate the arbitration award was logged in on the computerized docket sheet on August 25, 1992, and the order granting a hearing date in this matter was signed on August 25, 1992. In addition, plaintiff's Exhibit B CT Page 2738 indicates that the check submitted in payment of the court filing fee was processed on August 26, or August 27, 1992. Plaintiff's Motion to Open Judgment, Reargue and Reconsider, dated January 14, 1993, Exhibit B. See Housatonic Corporate Centre Associates Limited Partnership v. Planning and Zoning Board of the City of Milford, 1 Conn. L. Rptr. 685, 686 (May 31, 1990, Fuller, J.) (for purposes of determining when applications are "filed" with a planning and zoning board, the court finds that the operative date is the date upon which the filing fees were paid).
The court finds that plaintiff's application was "made" at the time of filing, and that the date the application was "filed was the date upon which plaintiff paid his filing fee. Accordingly, upon reconsideration, the court finds that plaintiff "made" his application in a timely manner in accordance with General Statutes 52-420(b).
This matter is before the court as a result of an underinsured motorist arbitration. For purposes of this action, the relevant facts are as follows. On July 7, 1984, plaintiff, Frederick Monsees, who is employed as a laborer-truck driver with Baier Construction Company, was injured in a motor vehicle accident while he was driving in the course of his employment. The accident occurred as a result of a head-on collision between Monsees' vehicle, a truck owned by his employer, and a vehicle operated by Donald Neel. The police cited Neel for traveling unreasonably fast and for passing in a no-passing zone, and, as a result of the accident, plaintiff suffered a compression injury and a fracture to the cervical and lumbar spine, resulting in a 5% permanent partial disability to each. (Defendant's Exhibit #4: Claimant's Position Statement, Exhibit A), (hereinafter "Claimant's Position Statement").
In addition, the parties to this action, plaintiff, Monsees, and defendant, Cigna, have stipulated to the following facts.[1] (See, generally, Arbitration Decision, dated July 15, 1992, p. 1).
Plaintiff is an insured under an Aetna Insurance Company policy, which provides underinsured motorist coverage of $50,000.00 per vehicle for two vehicles, and Neel, the tortfeasor, is insured under a Metropolitan Insurance Company policy with a liability limit of $50,000.00. (Defendant's Exhibit CT Page 2739 #5: Monsees Statement Under Oath, p. 4), (hereinafter "Monsees' Statement").
Plaintiff received $40,000.00 from the Metropolitan policy, and an additional $10,000.00 was paid out from the Metropolitan policy to Monsees' employer for property damage to the company vehicle. (Monsees' Statement, pp. 4, 12). Plaintiff also received workers' compensation payments in the amount of $27,219.05 from the Orion Group, the workers' compensation carrier for plaintiff's employer. Orion was later reimbursed for this amount out of the $40,000.00 settlement proceeds from the Metropolitan policy. (Monsees' Statement, p. 5; Plaintiff's Memorandum, dated August 25, 1992, p. 3). In addition, plaintiff received $38,007.43 from the Division of Workers' Rehabilitation Fund. (Monsees' Statement, p. 5; Plaintiff's Memorandum, dated August 25, 1992, p. 4).
The underlying arbitration was brought pursuant to the arbitration clause in plaintiff's Aetna policy and pursuant to General Statutes 38a-336(c), and an arbitration panel conducted a hearing on June 10, 1992. (Plaintiff's Memorandum, dated August 25, 1992, p. 4). The entire arbitration panel agreed that the full value of plaintiff's claim was $68,000.00. In addition, the panel majority found that a set-off of $40,000.00, representing the tortfeasor's liability payment, and an additional set-off of $38,007.43, the amount received from the Worker's Rehabilitation Fund, should be applied against the agreed-upon value of plaintiff's claim. The panel majority further concluded that plaintiff was not entitled to any further benefits because the set-off amounts, totaling $78,007.43, exceeded the total value of the case. (Arbitration Decision, p. 3).
Plaintiff filed an Application to Modify or Vacate the Arbitration Award on September 3, 1992, and defendant submitted a Motion to Confirm, dated September 18, 1992.
Initially, plaintiff maintains that the tortfeasor was an underinsured as defined by General Statutes 38a-336(b), and that plaintiff possessed $100,000.00 in underinsured motorist coverage at the time of the accident. Plaintiff further contends that defendant is statutorily entitled to a set-off of only $40,000.00; therefore, plaintiff concludes that he is entitled to an additional $28,000.00 in underinsured coverage from the Aetna policy. This figure represents CT Page 2740 the difference between $68,000.00, the value of the claim, and $40,000.00, the amount received from the tortfeasor's liability insurance policy. (See, generally, Plaintiff's Memorandum, dated August 25, 1992).
Defendant counters that, after all appropriate reductions are taken from defendant's limits of liability, plaintiff is not entitled to any further underinsured motorist coverage, and, in any event, no underinsured motorist claim has been triggered under the facts presented by this case. Defendant maintains that its liability of $100,000.00 should first be reduced by $40,000.00, and that if "either of the two additional claimed reductions in limits of liability are valid, Defendant's limits would, thereby, be reduced below the $50,000.00 of coverage provided by the tortfeasor's policy and, therefore, no underinsured motorist claim would be triggered." (Defendant's Memorandum, dated September 18, 1992, pp. 13-14).
In the alternative, defendant argues that if the court should find that plaintiff is entitled to additional coverage, plaintiff's recovery is limited to the difference between the applicable limits of liability of plaintiff's underinsured motorist coverage and the tortfeasor's limits of liability. (Defendant's Memorandum, dated September 18, 1992, p. 15). Defendant posits that, pursuant to the underinsured motorist statute, the proper set-off amount should be the total coverage available to the tortfeasor, i.e., $50,000.00, rather than the $40,000.00 that plaintiff actually received. (Defendant's Memorandum, dated September 18, 1992, p. 20). Finally, defendant maintains that the arbitrators properly set-off the $38,007.43 that plaintiff received from the Division of Workers' Rehabilitation Fund. Defendant emphasizes that the agreed-upon value of this claim is $68,000.00, and that if the court finds that the sum plaintiff received from the Fund, $38,007.43, is not a set-off, then plaintiff will have received payments totaling $105,007.43 on a claim valued at only $68,000.00.
General Statutes 38a-336(c) provides in pertinent part that "[e]ach automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." In the instant case, plaintiff's policy contains a provision CT Page 2741 for binding arbitration. (Plaintiff's Memorandum, dated August 25, 1992, Exhibit A: Aetna Policy). The parties engaged in compulsory arbitration, and the panel majority arrived at a final determination concerning the issue of coverage.
The Connecticut Supreme Court has concluded that the "substantial evidence" standard of review applies when a court reviews the factual findings of arbitrators in compulsory arbitration proceedings. Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 656, 591 A.2d 101 (1991). The court has further determined that "where judicial review of compulsory arbitration required by [section 38a-336(c)] is undertaken under General Statutes section 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171 (1987). See also Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371,375, 593 A.2d 498 (1991); Chmielewski v. Aetna Casualty 
Surety Co., supra, 655 n. 11.
In the instant matter, the arbitrators noted that the parties have stipulated to certain facts, (Arbitration Decision, p. 1); accordingly, the court must now engage in a de novo review of the arbitrators' interpretation and application of the law.
The parties stipulated to the fact that plaintiff is an insured under the Aetna policy, which provides underinsured motorist coverage of $50,000.00 per vehicle for two vehicles. (Arbitration Decision, dated July 15, 1992, p. 1; Plaintiff's Exhibit A: Aetna Policy). The parties further stipulated that the tortfeasor is insured under the terms of a Metropolitan policy with liability limits of $50,000.00. (Arbitration Decision, p. 1). The arbitrators concluded that, pursuant to General Statutes 38a-336(d),[2] plaintiff had "a valid underinsured motorist claim in that the sum of all bodily injury liability bonds ($50,000.00) is less than the applicable limits of liability under the uninsured motorist portion of the aetna [sic] policy (two vehicles x $50,000 = $100,000)." (Arbitration Decision, p. 2).
"The application of [section] 38-336 [sic] requires two distinct steps: (1) determining whether a vehicle is in fact underinsured, so that coverage is available; and (2) CT Page 2742 calculating the amount of the actual award due the victim." Covenant Insurance Co. v. Coon, 220 Conn. 30, 36, 594 A.2d 977
(1991).
When determining whether a vehicle is underinsured "the total of all liability insurance coverage available to an individual claimant must be compared to the amount of underinsured motorist coverage in each of the policies against which the victim has a claim." Covenant v. Coon, supra, 34. A claimant's uninsured motorist coverage is triggered "[i]f the total of the liability insurance is less than the uninsured motorist limits of the individual's policy. . . ." Id. An insurance company is obligated to pay "on a policy's uninsured motorist coverage only after `the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. . . .'" (Emphasis in original.) Continental Insurance Co. v. Cebe-Habersky,214 Conn. 209, 212, 571 A.2d 104 (1990), citing General Statutes 38-175c(b)(1) (now General Statutes 38a-336(b)). Moreover, in deciding whether a tortfeasor's vehicle is underinsured, it is permissible to stack coverage of separate vehicles listed under a single policy, i.e., intra-policy stacking. Covenant Insurance Co. v. Coon, supra, 37, citing Farm City Insurance Co. v. Stevens, 215 Conn. 157, 161, 574 A.2d 1300 (1990).[3]
Defendant maintains that plaintiff does not have a valid underinsured motorist claim because, in determining whether the tortfeasor's vehicle is underinsured, the amount of plaintiff's coverage should be compared to the tortfeasor's liability coverage only after defendant's liability is reduced by the amounts plaintiff received from the tortfeasor's policy, the workers' compensation payments, and the Workers' Rehabilitation Fund payments. (Defendant's Memorandum, dated September 18, 1992, p. 5).
The Aetna policy provides that:
 The limit of liability shall be reduced by all sums:
 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and CT Page 2743
 2. Paid or payable because of the bodily injury under any of the following or similar law:
a. workers' compensation law; or
b. disability benefits law.
(Plaintiff's Exhibit A: Aetna Policy, PP 01 54 (Ed. 7-83), page 2 of 3).
The policy language mirrors the language of section 38-175a-6(d) of the Regulations of Connecticut State Agencies. This section provides, in relevant part, that:
 Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been
 (1) paid by or on behalf of any person responsible for the injury,
 (2) paid or are payable under any worker's compensation or disability benefits law, or
 (3) paid under the policy in settlement of a liability claim. . . .
Although this subsection is entitled "Limits of liability," our Supreme Court appears to define "limits of liability" in terms of allowing set-offs or credits after the initial determination is made that the tortfeasor's vehicle is underinsured pursuant to the statute.
In Wilson v. Security Insurance Co., 213 Conn. 532,569 A.2d 40 (1990), a claimant had received worker's compensation payments in the amount of $74,033.39, and the court found that the claimant had maximum underinsured coverage in the CT Page 2744 amount of $40,000.00. Id., 534, 539. The court emphasized that "[section] 38-175a-6(d) of the Regulations of Connecticut State Agencies specifically authorizes uninsured motorist benefits to be reduced by the amount of such payments," id., 537, and the court determined that "if damages are paid pursuant to the worker's compensation law, the uninsured motorist coverage may be reduced accordingly." Id., 538. Although the worker compensation payments exceeded the claimant's maximum underinsured coverage, the Wilson court did not find that the claimant did not have a valid underinsured claim; rather, the court remanded the matter to the trial court "with direction to vacate the judgment and to modify the arbitration award to reflect underinsured motorist coverage in the amount of $40,000. . . ." Id., 539.[4]
In Lumbermens Mutual Casualty Co. v. Huntley,223 Conn. 22, 610 A.2d 1292 (1992) the issue was whether an insurer, who provided underinsured motorist coverage, could limit its liability by taking credit for a personal payment rendered by an underinsured tortfeasor to an insured claimant, id., 23, and the court held that "an uninsured motorist carrier may limit its liability by taking credit for a payment made by a tortfeasor to the insured." (Emphasis provided.) Id., 30.
The Lumbermens court examined the relationship between General Statutes 38a-336 (formerly General Statutes 38-175(c)), and 38-175a-6(d)(1) of the Regulations of Connecticut State Agencies, and it explained that in 1979, "[section] 38-175c was amended to include subsection (b)(1), which requires an insurance carrier to provide underinsured motorist coverage `after the limits of liability under all bodily injury liability bonds or insurance policies . . . have been exhausted. . . .'" Id., 27. The court observed that, during the Senate proceedings, Senator James J. Murphy, Jr., stated "`that once the liability insurance of the so-called responsible or negligent party has been exhausted, if there is additional coverage under one's uninsured motorists plan, then payment under that program would be triggered and allow for the greater recovery for the insured. . . .'" (Citation omitted.) Id., 27 n. 8. The court emphasized that the sole purpose of amending 38-175c to include subsection (b)(1) was "to provide for underinsured motorist coverage and not to prohibit an insurance carrier from reducing underinsured motorist coverage when appropriate." Id., 28. The court also observed CT Page 2745 that "[s]ince 1979, when underinsured motorist coverage was mandated, [section] 38-175c has been amended five times, yet the legislature has never taken action to prohibit an underinsured motorist carrier from reducing payment to its insured in accordance with the regulations." (Emphasis provided.) Id., 30.
The court further observed that in Wilson v. security Insurance Co., supra, 538-39, it held that "[section 38-175a-6 of the regulations, which also allows setoffs for workers' compensation benefits, is consistent with the coverage requirements of [section] 38-175c, the statute at issue in the present case." (Emphasis provided.) Id., 29. The court noted that "[h]ere, as in Wilson, we conclude that [section] 38-175a-6(d)(1) of the Regulations of Connecticut State Agencies, which allows the setoff of a tortfeasor's personal payment, is consistent with the coverage requirements of General Statutes [section] 38-175c." (Emphasis provided.) Id., 30.
Accordingly, the Wilson and Lumbermens courts treated "limits of liability" and reductions of uninsured motorists coverage as set-offs or credits, and neither court discussed such coverage reductions as a means of initially determining whether a tortfeasor's vehicle was underinsured.
It is undisputed that plaintiff's policy provides underinsured motorist coverage of $50,000.00 per vehicle for two vehicles, and that the tortfeasor's policy contains a liability limit of $50,000.00. After stacking the coverage on plaintiff's two vehicles, plaintiff has coverage in the amount of $100,000.00, and comparing this amount to the tortfeasor's liability limit of $50,000.00, the arbitrators correctly determined that plaintiff had a valid underinsured motorist claim, and that he had underinsured coverage in the amount of $100,000.00.
The tortfeasor was insured under the terms of a Metropolitan policy that had liability limits of $50,000.00. Plaintiff received a payment of $40,000.00 from this policy, and an additional $10,000.00 was paid to plaintiff's employer for property damage to the company vehicle. The arbitrators determined that "the actual amount received by the claimant [$40,000] is the controlling number rather than the $50,000 liability limit." (Arbitration Decision, p. 3). Therefore, CT Page 2746 the arbitrators determined that defendant was entitled to a set-off in the amount of $40,000.00. Plaintiff concedes that defendant is entitled to a $40,000.00 set-off, (Plaintiff's Memorandum, dated August 25, 1992, p. 14); however, defendant contends that it is entitled to a $50,000.00 set-off. (Defendant's Memorandum, dated September 18, 1992, pp. 15, 17.).
Section 38-175a-6(d)(1) of the Regulations of Connecticut State Agencies permits a reduction in the limits of liability "to the extent that damages have been paid by or on behalf of any person responsible for the injury," (emphasis provided), and the Aetna policy provides, in pertinent part, that the limit of liability will be reduced by sums "[p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." (Emphasis provided.) (Plaintiff's Exhibit A: Aetna Policy, PP 01 54 (Ed. 7-83), page 1 of 3).
Guertin v. Holyoke Mutual Insurance, 6 CTLR 127 (March 11, 1992, Meadow, J.) is analagous to the case at bar. In Guertin, the plaintiff/claimant had received a portion of the tortfeasor's $100,000.00 liability coverage, while the remainder of the coverage was apportioned among other claimants. Plaintiff had $200,000.00 of uninsured motorist coverage, and the arbitrators awarded her the difference between her ascertained damages, and the amount she received from the tortfeasor. The defendant/insurer, relying on American Motorists Insurance Co. v. Gould, 213 Conn. 625, 569 A.2d 1105 (1990), maintained that it was entitled to a set-off of the total amount available under the tortfeasor's liability policy, and not merely the amount plaintiff actually received pursuant to that policy. Id., 127.
The Guertin court concluded that the Gould case was inapplicable, emphasizing that "[t]he court in Gould was not determining the amount of set-off of an award, but rather whether the tortfeasor was underinsured according to the statute and the claimant was entitled to any award." Id.[5] The court observed that the policy at issue provided that any "`amounts otherwise payable under this [uninsured motorist] coverage shall be reduced by all sums: 1. Paid because of the bodily injury . . . on behalf of persons . . . who may be legally responsible.'" Id., 128. Thus, the court reasoned that Guertin's policy dictated that any amount recoverable by plaintiff shall be reduced "`by all sums paid because of the CT Page 2747 bodily injury.'" (Emphasis in original.) Id. The court interpreted this provision in light of the rule that "`a limitation of liability of uninsured and underinsured motorist coverage must be construed most strongly against the insurer,'" and concluded that such language could "only refer to sums paid because of the plaintiff's bodily injury and not others' bodily injury, therefore entitling the defendant insurer a set-off in the amount of sums paid because of the plaintiff's bodily injury. . . ." Id., citing American Universal Insurance Co. v. DelGreco, 205 Conn. 178, 196, 530 A.2d 171 (1987).
In the instant matter, plaintiff's policy provides, in part, that "[t]he limit of liability shall be reduced by all sums: (1) [p]aid because of the bodily injury by or on behalf of persons . . . who may be legally responsible." (Emphasis provided.) (Plaintiff's Exhibit A: Aetna Policy, PP 01 54 (Ed. 7-83), page 1 of 3). Therefore, consistent with the reasoning employed by Judge Meadow in the Guertin case, the defendant in the instant matter is not entitled to a setoff of the entire amount of the tortfeasor's liability policy because $10,000.00 of that amount was paid to plaintiff's employer for property damage to the company vehicle. Rather, defendant is entitled to a set-off in the amount of $40,000.00, i.e. the amount actually received by plaintiff for his bodily injuries from the legally responsible tortfeasor.
General Statutes 31-283a provides, in relevant part, that:
 (a) There shall be within the workers' compensation commission a division of workers' rehabilitation which shall provide rehabilitation programs for employees suffering compensable injuries within the provisions of this chapter, which injuries disabled them from performing their customary or most recent work. . . .
Pursuant to this section, plaintiff received payments totaling $38,007.43 from the Division of Workers' Rehabilitation. (Arbitration Decision, p. 1). Plaintiff received $4,203.43 of this amount for tuition and related expenses at Hartford State Technical College, and he received an additional $33,805.00 as a stipend for living expenses. (Plaintiff's Memorandum, dated August 25, 1992, p. 25; Monsees' Statement, CT Page 2748 p. 5).
The arbitrators found that the $38,007.43 was an appropriate set-off "as a payment under `any workers' compensation law.'" (Arbitration Decision, p. 3). The arbitrators conceded that "this payment does not represent [a] traditional workers' compensation payment and in fact may not qualify as a `damage' payment under [section] 38-175-6(d) . . ."; however, the arbitrators observed that they were bound by the decision in Wilson v. Security Insurance Company.
Generally, plaintiff argues that the arbitrators improperly allowed this amount as a set-off. Plaintiff concedes that traditional workers' compensation benefits are allowable as set-offs, but he contends that the Connecticut Supreme Court recently determined that Worker's Rehabilitation Fund payments are not traditional workers' compensation payments. (Plaintiff's Memorandum, dated August 25, 1992, p. 25), citing Crocetto v. Lynn Development Corporation, 223 Conn. 376, ___ A.2d ___ (1992)).
Defendant maintains that Crocetto is distinguishable factually because Crocetto involved the plaintiff/employee's right to recover health insurance benefits during the period of time he received a subsistence allowance from the Workers' Rehabilitation Fund. Defendant observes that the instant case does not involve an employer's obligation under the Workers' Compensation Act, "but rather the effect of Plaintiff's receipt of such sums on the rights of the parties to this uninsured motorist proceeding." (Defendant's Memorandum, dated September 18, 1992, p. 10).
In Crocetto v. Lynn Development Corporation, supra, the issue was whether a subsistence allowance collected by a former employee, who was enrolled in a workers' rehabilitation program, constituted workers' compensation payments within the meaning of General Statutes 31-284b(a). Id., 377. Section31-284b(a) mandates that, during the period within which an injured employee receives, or is eligible to receive, workers' compensation payments an employer must provide the employee with the same health insurance coverage that the employee had been receiving on the date of the injury. Id., 381. The court reasoned that in order to trigger the obligatory provision of health insurance coverage the subsistence allowance must be required by statute or by regulation. The court CT Page 2749 emphasized that "[t]he mere fact that a practice may exist to award subsistence allowances to participants in the rehabilitation program" was insufficient to trigger the obligatory provision, id., 382, and the court concluded that "the ad hoc award of subsistence allowances do not qualify as `workers' compensation payments' under [section] 31-284(b)." Id., 383.
Although the Crocetto court finally concluded that subsistence allowance payments did not qualify as workers' compensation payments under section 31-284b, (emphasis provided), id., 383, the court had earlier concluded "that a subsistence allowance is not a payment authorized by the act and, therefore, health insurance coverage should not be reinstated because of the award of such an allowance." (Emphasis provided.) Id., 381. Thus, the court intended that subsistence allowance payments should not be considered workers' compensation payments even outside the confines of General Statutes 31-284b. The court further observed that "plaintiff conceded at oral argument that a subsistence allowance is not authorized by statute or by administrative regulations," id., 381, and the court found that this failure prevented the triggering of the mandatory health coverage provision. similarly, this court finds that the lack of statutory or regulatory authorization of a subsistence allowance also prevents the triggering of the set-off provision of 38-175-6(d).[6]
The arbitrators observed that the parties had stipulated to the fact that plaintiff had received $27,219.05 in workers' compensation payments from the Orion Group, but that this amount had been reimbursed out of the proceeds of the $40,000.00 settlement from Metropolitan. (Arbitration Decision, p. 1). Apparently, the arbitrators found it unnecessary to discuss the $27,219.05 because they had already found that the two existing set-offs, ($40,000.00 from the tortfeasor's liability insurance and $38,007.43 from the Workers' Rehabilitation Fund), exceeded the agreed-upon value of the claim ($68,000.00).
Plaintiff concedes that this amount would ordinarily be set-off pursuant to the Aetna policy and the pertinent regulation; however, plaintiff notes that "this situation is unique in that the claimant has already reimbursed the Workers' Compensation carrier from the proceeds of the settlement from Metropolitan." (Plaintiff's Memorandum, dated August 25, 1992, p. 21). Plaintiff emphasizes that if he were CT Page 2750 "required to reimburse the compensation amount twice . . ." defendant would receive a double reduction.
The legislative intent of General Statutes 38a-336
"was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage," (emphasis provided.) American Motorists Insurance Co. v. Gould, supra, 632, and our regulations prevent double recovery by providing for certain reductions, including payments received from workers' compensation. Regulations of Connecticut State Agencies, 38-175a-6(d)(2). Just as plaintiff would be prevented from obtaining double recovery, it also would be inequitable to subject plaintiff to a double reduction by permitting a set-off of an amount when plaintiff has already reimbursed the amount. Accordingly, the $27,219.95 in workers' compensation payments should not be allowed as a set-off.
The court finds that the arbitrators correctly found that plaintiff had $100,000.00 of available underinsured motorist benefits under the Aetna policy, and that the arbitrators properly set-off the $40,000.00 payment. However, they improperly set-off the $38,000.43. Thus plaintiff is entitled to an additional $28,000.00.
The arbitration award is vacated and modified to conform to this decision.
JOHN J. LANGENBACH