[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' APPLICATION TOVACATE ARBITRATION DECISION
The issue in this case is whether the court should grant the plaintiffs' application to vacate the arbitration decision in favor of the defendant carrier where the plaintiffs did not exhaust the policy limits of the tortfeasor's liability insurance but instead recovered the amount of the tortfeasor's policy limit CT Page 10607 from the plaintiffs' former attorney's malpractice coverage?
On January 12, 1995, the plaintiffs, Paul Grant and Frank Grant, filed an application to vacate an arbitration award rendered in favor of the defendant, Great American Insurance Company (Great American), concerning the applicability of the plaintiffs' underinsured motorist coverage. The parties stipulated to the following facts before the arbitration panel.
On May 26, 1989, Paul Grant was involved in an accident with a motorcycle owned by Woodie Cyr and operated by Mark E. Paletto. Frank Grant is the owner of the car that Paul Grant was riding in when the accident occurred. The negligence of Mark E. Paletto was the proximate cause of the accident. Cyr carried a $20,000 bodily injury liability policy on the motorcycle. At the same time, Paul Grant had in force an uninsured/underinsured motorist policy with a coverage limit of $300,000.
Subsequent to the accident, Paul Grant retained a lawyer to pursue a claim against Cyr and Paletto. Said lawyer, however, failed to file suit against Cyr and Paletto prior to the expiration of the two year statute of limitations for personal injury tort claims. As a result, there were no moneys ever paid on behalf of Cyr or Paletto, the tortfeasors, to Paul Grant. The plaintiff, Paul Grant, then instituted and subsequently settled an action against his prior counsel for malpractice for the amount of the policy which would have been available ($20,000) had suit been timely brought against the initial tortfeasor. Thereafter, the plaintiff then pursued the underinsured motorist claim.
On December 13, 1994, the matter was submitted to arbitration on the narrow issue of whether the payment to Paul Grant by his prior counsel's malpractice carrier satisfied the exhaustion requirement of General Statutes § 38a-336 (b). The panel consisted of three attorneys, two of whom found in favor of the carrier, finding no exhaustion, and one who dissented, reasoning that exhaustion had occurred and, therefore, Paul Grant was entitled to recovery.
The parties have filed briefs in support of their respective positions.
The matter is before the court on the plaintiffs' motion to vacate the arbitrators' decision pursuant to General Statutes CT Page 10608 § 52-418(a) that provides, in pertinent part, "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." This subsection encompasses errors of law, therefore, "the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." American Universal Ins. Co. v. DelGreco, 205 Conn. 178,191, 530 A.2d 171 (1987).
The salient legal issue in this case is whether the exhaustion requirement of General Statutes § 38a-336(b) is satisfied by the plaintiffs' recovery of the tortfeasor's coverage limit from an entity other than the tortfeasor's liability carrier. Section 38a-336(b) provides that "[a]n insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily in jury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage." Id.
The plaintiff argues that the purposes of the statute have been satisfied and the defendant is not out of pocket any moneys and, therefore, coverage should attach. Further, he argues thatLumbermens Mutual Casualty Co. v. Huntley, 223 Conn. 22, 28,610 A.2d 1292 (1992) requires coverage in this case, since "[t]here the Court held that where a tortfeasor makes payments individually to a claimant, said payments may be deducted from the amount required to be paid out as underinsured benefits."
The defendant insurance carrier argues that the payment made to the plaintiff by his prior counsel's malpractice carrier does not qualify as a payment under a bodily injury liability bond or insurance policy applicable at the time of the accident and, therefore, coverage for the plaintiff's injuries do not exist.
After a thorough review of Connecticut precedent and that of other jurisdictions, it would appear that there are no cases that CT Page 10609 address this precise issue. There is, however, a Connecticut decision that is factually analogous to the present case. InStanlake v. United Services Automobile Association, Superior Court, JD of New Haven at New Haven, DN. 357200 12 Conn. L. Rptr. 299
(August 10, 1994) (Booth, J.), the court construed the exhaustion language of General Statutes § 38a-336 as it applied to personal, self-insured payments made by the tortfeasor to the injured plaintiff. In Stanlake, Judge Booth concluded that although § 38a-336 speaks only to payments made through "bodily injury liability bonds and insurance policies applicable at the time of the accident," payments made by the individual tortfeasor could be considered in determining whether the exhaustion requirement of the statute was satisfied. Id. In interpreting the statute, the court held that full exhaustion required the elimination of self-insurance payments as well as payments received under liability bonds or insurance policies. "The court holds that for the purposes of exhaustion self-insurance is a functional equivalent of `bodily injury liability bonds in insurance policies.' Therefore, if the claimant is required to exhaust the limits of bodily liability under bodily liability bonds and insurance policies, the claimant is also required to exhaust the limits of applicable self-insurance." Id.
This court finds that the same rationale can be applied to this case. The full face amount of the tortfeasor's coverage was exhausted by a payment made other than through the tortfeasor's liability insurance coverage. In this way, the case is similar toStanlake in that sources other than the tortfeasor's liability coverage should be considered in determining whether exhaustion has occurred.
Furthermore, a finding that coverage is mandated under the circumstances of this case would be consistent with the policy underlying the statute. "The purpose of . . . [§ 38a-336] is to compensate an insured to the same extent as he would have been if he had been injured by a motorist carrying liability insurance equal to the coverage carried by the insured, unless the insured has elected in writing uninsured motorist coverage in an amount less than his liability coverage." Mass. v. United States Fidelity Guaranty Co., 222 Conn. 631, 647, 610 A.2d 1185 (1992);Williams v. State Farm Mutual Automobile Insurance Co., 229 Conn. 359,366, 641 A.2d 783 (1994). "It is a `time honored rule that an injured party is entitled to a full recovery'" for all compensable injuries received. Rydingsword v. Liberty Mutual Ins.Co., 224 Conn. 8, 18, 615 A.2d 1032 (1992), quoting Peck v.CT Page 10610Jacquemin, 196 Conn. 53, 70 n. 19, 491 A.2d 1043 (1985); see alsoMourison v. Hansen, 128 Conn. 62, 65, 20 A.2d 84 (1941) ("full compensation" allowed "for all damage proximately resulting from the defendant's negligence"); Doroszka v. Lavine, 111 Conn. 575,578, 150 A. 692 (1930) (purpose in assessing damages for civil wrongs is to compensate the plaintiff for his injuries).
Accordingly, based on the policy considerations in this case and payment by the malpractice carrier amounting to the "functional equivalent" of a payment by the tortfeasor's carrier, this court grants the plaintiffs' application to vacate the arbitration decision and remands the case to the arbitrators for a full hearing, consistent with this decision, pursuant to General Statutes § 52-418(b).
Morton I. Riefberg Judge of the Superior Court